

## NUMBER 13-11-00521-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

BOBBY ORTEGA
A/K/A BOBBY BROWN,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                    Appellee.

### On appeal from the 105th District Court
### of Kleberg County, Texas.

## MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Benavides and Longoria
### Memorandum Opinion by Justice Benavides

By one issue, appellant Bobby Ortega a/k/a Bobby Brown ("Ortega") asserts that insufficient evidence supports his convictions for one count of murder, *see* TEX. PENAL CODE ANN. § 19.02(b) (West 2011) and two counts of aggravated assault. *See id.* § 22.02(a) (West 2011). We affirm.

# I.    BACKGROUND[1]

In the late-night hours of August 7, 2010, RAX Sports Bar in Kingsville turned into a crime scene after a bar brawl left 20-year-old Matthew "Matt" Garcia dead[2] and his 23-year-old brother, Jason Garcia, and 30-year-old Ernesto "Ernie" Garza bleeding profusely from stab wounds.   A Kleberg County grand jury indicted Ortega for Matt's murder and the aggravated assaults of Jason and Ernie.   The State presented the following evidence at Ortega's jury trial.

On August 7, 2010, Ortega and his girlfriend Chelsea Muñiz visited RAX Sports Bar after attending a dance earlier in the evening with another couple, Danny Gonzales and Sophia Campos.   Once at RAX, Ortega and the others entered a separate nightclub located inside RAX known as Club, Inc.   Inside Club, Inc., witnesses testified that Ortega and Matt approached each other and exchanged words, but later shook hands and separated.

After that exchange, Sophia and Danny approached Matt, who was standing with his brothers Jason and Jaime Garcia.   Several witnesses recalled that Sophia cussed and yelled at Danny to, as Jason testified, "go after" Matt for a previous altercation that the Garcia brothers had with Sophia's cousin.   Club, Inc. bartender Ozzie Mejorado testified that she then witnessed Sophia make a move toward Matt with Danny and Bobby in tow, which then erupted into the brawl.   Club, Inc.'s disc jockey Juan Salazar corroborated how the fight unfolded as he saw it atop the dance floor from his deejay

---

[1] As this is a memorandum opinion and because all issues of law presented by this case are well settled and the parties are familiar with the facts, we will not recite the law and the facts in this opinion except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

[2] Nueces County medical examiner Ray Fernandez, M.D. autopsied Matthew Garcia's body.   Dr. Fernandez testified that 20 sharp-force injuries from stab wounds across Matt's body caused his death.

booth.   Salazar likened the fight to an attack by "a pack of wolves."

Once the fight dissipated and the crowd disbursed, Jaime located and drove his bleeding brothers to Christus Spohn hospital in Kingsville.   Jason testified that on the car ride to the hospital, Matt said that he "got stabbed" and was fading in and out of consciousness.   Jason also testified that at that time, his body was aching, and he felt like he could not breathe.   At the hospital, Matt died and Jason was treated for his wounds.   Ernie, a bystander who intervened in the brawl to help break it up, stayed behind at RAX, spoke to police and paramedics, and was eventually hospitalized for six stab wounds to the back, neck, and ear.

Jurors found Ortega guilty for each count alleged in the indictment and assessed punishment at life imprisonment for Matt's murder, and twenty years' imprisonment for each aggravated assault count.   The trial court ordered that the sentences run concurrently.   This appeal ensued.

## II.     DISCUSSION

Ortega's sole issue asserts that the evidence is insufficient to sustain any of his convictions.

### A.     Standard of Review

When reviewing a defendant's sufficiency challenge, we view the evidence in the light most favorable to the verdict to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012) (citing *Brooks v. State*, 323 S.W.3d 893, 902 (plurality op.)); *see Jackson v. Virginia*, 443 U.S. 307, 319 (1979).   The jury is the sole judge of the credibility of witnesses and the weight to be

3

given to their testimonies, and the reviewing court must not usurp this role by substituting its own judgment for that of the jury. *Montgomery*, 369 S.W.3d at 192. Thus, our duty is "simply to ensure that the evidence presented supports the jury's verdict and that the State has presented a legally sufficient case of the offense charged." *Id.* (internal citations omitted). When faced with a record supporting contradicting inferences, we must presume that the jury resolved such conflicts in favor of the verdict, even if not explicitly stated in the record. *Id.* (citing *Brooks*, 323 S.W.3d at 899 n.13).

The elements of the offense are measured as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.*

### B. Count One—Murder

By its first count, the State alleged that Ortega murdered Matt. Under a hypothetically correct jury charge authorized by the indictment in this case, Ortega is guilty of murder if he: (1) with the intent to cause serious bodily injury, (2) committed an act clearly dangerous to human life that caused Matt's death; or (1) committed or attempted to commit aggravated assault, and (2) in the course of and in furtherance of the commission or attempt to commit said aggravated assault, (3) committed or attempted to commit an act clearly dangerous to human life that caused Matt's death. *See* TEX. PENAL CODE ANN. § 19.02.

4

Under a hypothetically correct jury charge, Ortega committed aggravated assault if he (1) intentionally, knowingly, or recklessly caused bodily injury to Matt, and either, (a) caused serious bodily injury to Matt; or (b) used or exhibited a deadly weapon, to wit: a knife or sharp object during the commission of the assault. *See id.* §§ 22.01–.02.

Ortega argues that no evidence connects Ortega to the commission of Matt's murder. We disagree. Nueces County Medical Examiner, Dr. Ray Fernandez, testified that Matt's autopsy revealed twenty sharp-force injuries caused by stab wounds which resulted in his death. All of the witnesses placed Ortega and Matt in the middle of the fight at Club, Inc. on August 7, 2010. Matt's sister, Byanca Garcia, testified that she saw Matt and Ortega punching each other that night. Byanca also testified that she saw Bobby make "stabbing" motions toward her brother's body and gestured the motion for the jury. Byanca admitted, however, that she never saw a knife, but did see Ortega "stabbing [her] brother." Club, Inc. deejay Salazar testified that he witnessed Ortega also make "stabbing" motions toward Matt, but did not see a knife or blood. Jason testified that he saw Ortega fighting with Matt, but it "didn't look like he was punching him." Instead, Jason stated that Ortega made a non-punching motion toward his brother and demonstrated the motion for the jury.

Leonessia Mejorado, another Club, Inc. patron, testified at trial. Leonessia stated that she remembered a male, who wore a red and white striped shirt, make "poking" gestures rather than punching gestures toward Matt, but never saw a knife in his hands. Witness Sonia Vela told the jury that she saw a "little guy" at Club, Inc. who wore a red and white striped polo-style shirt, had his arm wrapped around Matt's body, and thrust his hand toward Matt. Sonia replicated the motion for the jury. Other Club,

5

Inc. patrons Nori Martinez and Kayla Peña also testified. Nori and Kayla identified Ortega through a police photo lineup as the individual who made stabbing motions toward Matt during the fight. Nori testified that she saw Ortega "all bloody," wearing a striped shirt, but then saw him wearing a white t-shirt. Kayla stated that she saw Matt on the floor, attempting to get up, and saw Ortega make three thrusts toward him.

Ortega's girlfriend, Chelsea, and Ortega's sister, Krystyne Gonzales, each testified that Ortega wore a red, black, and white striped collared shirt to Club, Inc. that night. Chelsea testified that Ortega sliced his finger during the fight that night and told her it was from a broken bottle, but he did not seek medical treatment. According to Dr. Fernandez, it is common for people who stab others to cut themselves after the object becomes soaked with blood and slippery to the touch.

Chelsea also told the jury that Ortega sometimes carried a pocket knife, but he did not have a knife with him that night. The record also shows that Ortega, Chelsea, and Krystyne immediately left the scene after the brawl to go home, which is indicative of a "consciousness of guilt." See Hyde v. State, 846 S.W.2d 503, 505 (Tex. App.—Corpus Christi 1993, writ ref'd) (noting that "any conduct on the part of a person accused of a crime subsequent to its commission, which indicates a 'consciousness of guilt,' may be received as a circumstance tending to prove that he committed the act with which he is charged").

Kingsville Police Detective Velma Salinas interviewed Ortega two days after Matt's death. Detective Salinas testified that Ortega told her that a "big guy" in a Yankees cap came at him with a knife that night, he put out his hand, and that is what caused the cut on his hand. Ortega also denied to police that he possessed a knife that

6

night or that he even owned a knife. The State admitted a recorded jail telephone conversation made after Ortega's arrest in which he told an unknown caller "I'm glad I got that shit out of there before them [sic] fools got there."

After viewing this evidence in the light most favorable to the verdict, we conclude that any rational trier of fact could have found that Ortega committed the essential elements of Matt's murder beyond a reasonable doubt. *See* Tex. Penal Code Ann. §§ 19.02; 22.01–.02; *see generally Montgomery*, 369 S.W.3d at 192.

### C. Counts Two and Three—Aggravated Assault

By its second and third counts of the indictment, the State alleged that Ortega committed an aggravated assault against Jason and Ernie.

Under a hypothetically correct jury charge, Ortega is guilty of aggravated assault if he (1) intentionally, knowingly, or recklessly caused bodily injury to Jason and Ernie and (a) caused serious bodily injury to Jason and Ernie; or (b) used or exhibited a deadly weapon, to wit: a knife or sharp object during the commission of the assault. *See* Tex. Penal Code Ann. §§ 22.01–.02.

Ortega argues that no evidence connects him to either one of the aggravated assaults. We, again, disagree. Jason testified that when the fight initially commenced, he focused his attention on Danny and fought with him. Jason then stated that while he fought Danny, he "felt a sharp pain" on his back and saw somebody run around him in a white t-shirt, "like [Ortega] had on" and attacked Ernie against the wall. Nori testified that she saw Ortega in a striped shirt and then a white t-shirt that night. Ozzie testified that she also witnessed Jason and Ortega fighting that night.

7

Ernie testified that he intervened in the brawl in order to help break up the fight. On cross-examination, Ernie testified that he was not "aware" if Ortega stabbed him because he would have seen it. Ernie indicated that during the melee he ended up on top of Ortega and felt hits to his back. RAX Sports Bar owner Rogelio "Rocky" Dominguez also testified about his observations that night and the role he played in trying to break up the fight. According to Rocky, he approached the brawl and grabbed a "small guy"—later identified as Ortega—for a couple of seconds before Ortega broke away from him and attacked Ernie from behind. Rocky gestured for the jury how Ortega broke away from him and later attacked Ernie. Rocky testified that Ernie grabbed Ortega, and they both fell into a pile of people along with another "small guy." Once in the pile, Rocky testified that Sophia began to hit Ernie on the back with her shoe telling Ernie to "get off of [her] husband."

Dr. Fernandez testified that he reviewed Jason and Ernie's medical records as well. According to Dr. Fernandez, Jason and Ernie's injuries were of the type that required hospitalization and carried the risk of death because the stab wounds were located in the chest area.

After viewing this evidence coupled with the evidence outlined in Part II-B, in the light most favorable to the verdict, we conclude that any rational trier of fact could have found that Ortega committed the essential elements of aggravated assault against Jason and Ernie beyond a reasonable doubt. *See* TEX. PENAL CODE ANN. §§ 19.02; 22.01–.02; *see generally Montgomery*, 369 S.W.3d at 192.

Ortega's issue is overruled.

8

### III. CONCLUSION

We affirm the trial court's judgment.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
25th day of April, 2013.