

## NUMBER 13-12-00480-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

**EFREN MOLINA,**                                                      **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                          **Appellee.**

### On appeal from the 117th District Court
### of Nueces County, Texas.

## MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides, and Longoria
### Memorandum Opinion by Justice Benavides

Appellant, Efren Molina, challenges his conviction for continuous sexual abuse of a child, a first-degree felony. *See* TEX. PENAL CODE ANN. § 21.02 (West 2011). By three issues, which we have reorganized, Molina asserts that: (1) the evidence is insufficient to sustain his conviction for the charged offense; (2) the trial court erred by not including a jury instruction on the lesser included offenses of aggravated sexual

assault of a child and indecency with a child; and (3) the trial court erred by allowing expert testimony.  We affirm.

## I.  BACKGROUND

In March 2012, a Nueces County grand jury indicted Molina for continuous sexual abuse of a child,[1] from September 15, 2007 through February 15, 2012.  *See id.* Molina pleaded not guilty and was tried before a Nueces County jury.  The following evidence was presented at trial.

### 1.  Complainant, N.H.

In April 2008, Child Protective Services (CPS) notified Corpus Christi Police Detective Michael Isle of a "priority one" case[2] involving eleven-year-old N.H.[3] Detective Isle, along with CPS investigators, contacted N.H. to conduct an initial interview.  At that time, N.H. did not make an outcry of sexual abuse, but several hours later, N.H. made an outcry against Molina.  According to Detective Isle, N.H. did not know the exact dates of the assaults, but told him that the last occurrence took place two weeks prior to the interview, around Easter.  Detective Isle also took statements from N.H.'s mother, B.H., as well as Molina, and turned his investigation file over to the Nueces County District Attorney's Office for further handling.  The file was returned to Detective Isle for unknown reasons and was not pursued at that time.

B.H. testified that Molina was married to B.H.'s sister, Carolyn.  According to

---

[1] More specifically, the State alleged that Molina committed two or more acts of sexual abuse, *see* TEX. PENAL CODE ANN. § 21.02(c) (West 2011), against complainants E.R. and/or N.H., who were children both younger than age fourteen.  *See id.* § 21.02(b)(1) (West 2011) (stating that the commission of the offense does not hinge upon whether the acts of sexual abuse are committed against one or more victims).

[2] Detective Isle described "priority one cases" as "mostly sexual assaults" involving children.

[3] We use aliases to identify the complainants and their family members, in order to protect the minor's identities.

B.H., Carolyn and Molina spent "a lot of time with [her] children," and Molina became her children's "favorite uncle." B.H. stated that she initially became aware of the allegations against Molina after CPS investigators called her to notify her about N.H.'s outcry. B.H. later learned that N.H. first told her friend, Briana, about Molina's alleged abuse, and Briana told her mother, who reported the outcry to CPS. B.H. stated that N.H. eventually told her that Molina had exposed himself to her, put his fingers in her vagina, and had held her down in the bed. According to B.H., N.H. said that these acts took place over a "few months" time.

N.H., who was fifteen at the time of trial, testified that Molina's abuse began when she was ten years old. When the State asked her why she was testifying at trial, N.H. responded by stating: "my uncle raped me." N.H. recounted three separate incidents of alleged abuse involving her and Molina. The first incident involved a time in which she and Molina were swimming in Molina's backyard pool, and Molina put his hand on her vagina and breast. N.H. stated that she was scared at the time and that Molina put his hand on the outside and inside of her bathing suit. The second incident took place at N.H.'s house when Molina babysat her. According to N.H., both were watching television in her brother's bedroom, when Molina started moving closer to her and began to touch her. N.H. testified that Molina then lied down on the bed, pulled his pants and underwear down, and exposed his penis to her. N.H. stated that Molina then began to masturbate and left the room. N.H. stated that later that day, she covered herself with the blanket in the bedroom, but Molina returned to the bedroom, ripped off the blanket, and put her legs around him to straddle his body and move her body. N.H. stated that Molina's inserted his penis into her vagina that day. The third incident took place in

3

N.H.'s computer room.  According to N.H., she was playing on her computer, when Molina came into the room, grabbed her, and put his hand "in [her] private area[,] again."

N.H. stated that, initially, she was scared to tell anyone about what had happened because she cared for Molina; however, she grew tired of the abuse and told her friend Briana.  Briana, who passed away prior to trial, told her mother who called CPS.

### 2.  Complainant, E.R.

On February 21, 2012, Corpus Christi Police Department Detective Crispen R. Mendez Jr. was assigned a new case in which Molina was the suspect of alleged inappropriate texting with eleven-year-old, E.R.  During his investigation, Detective Mendez interviewed E.R.'s mother, B.C., who told him that her daughter was using a friend's cellular phone at school to text Molina.  Detective Mendez scheduled an interview for E.R. at the Children's Advocacy Center, but E.R. did not make an outcry at that time.  However, a second interview was conducted at the Children's Advocacy Center, and E.R. made an outcry of abuse against Molina.  Detective Mendez eventually called Molina in for an interview, which was videotaped and played for the jury.

B.C. testified that Molina was friends with E.R.'s father, and that she and Molina had a "boyfriend/girlfriend" relationship from March 2010 until February 2012.  Molina was married at the time to Carolyn.  B.C. also stated that Molina lived with her and her children in a Corpus Christi apartment from July 2010 until October 2011.  B.C. stated that sometime in February 2012, she received a phone call at work from E.R.'s school to notify her that the school had confiscated a cellular phone from E.R.'s possession and

4

that B.C. needed to retrieve it. According to B.C., E.R. did not own a cellular phone, and the phone belonged instead to E.R.'s friend, Jalissa.

B.C. eventually retrieved the phone from the school and discovered a text-message conversation between E.R. and Molina. Photographs of the conversation were admitted into evidence. According to B.C., E.R. denied that anything was going on between her and Molina. Unconvinced, B.C. sent fake text messages to Molina, pretending to be E.R., to see if he would respond. Molina eventually responded, and B.C. called the police. B.C. took E.R. to Driscoll Children's Hospital for an examination. E.R. was also later transported to the Children's Advocacy Center for an interview.

B.C. testified that certain events over the previous months made her suspicious of Molina. The first involved an incident in which B.C. found a used condom wrapper on the floor of her bedroom and confronted Molina about it. B.C. stated that she and Molina would not use condoms during sexual intercourse, but Molina explained to her that he used the condom to masturbate. B.C. also testified about the time she found an open bottle of sexual lubricant in her bedroom. B.C. admitted that she owned the lubricant, but never left it out in the open. B.C. also recalled another incident in which she found Molina kissing E.R. in their apartment complex's laundromat on Thanksgiving Day 2011. When B.C. asked what the two were doing, Molina told her that he gave E.R. a kiss because she was sad that her dad was not involved in her life, "so he was comforting her." B.C. also testified that E.R. began crying a lot at school for unknown reasons and was tardy at school, but her other children were never tardy.

E.R. also testified. E.R. told the jury that Molina sexually abused her. E.R. recounted the Thanksgiving Day 2011 incident described by her mother, and stated that

5

her kiss with Molina that day was a "boyfriend/girlfriend kind of kiss." E.R. stated that she loved Molina and that Molina told her that he loved her. E.R. testified that Molina put his penis in her anus "lots of times" and estimated the number of times at "more than five or ten." E.R. stated, however, that Molina never put his penis or fingers in her vagina.

According to E.R., Molina would abuse her after B.C. left early in the morning for work. E.R. identified one specific incident when Molina stayed the night at the family's apartment. According to E.R., Molina woke her up out of bed, took her to the apartment's living room, took off her clothes and underwear, and put his penis into her anus. E.R. stated that prior to that incident, she had never seen a man's penis, and that Molina's penis that day had "some rubber thing" on top of it. E.R. stated that events like the one she described for the jury happened "more times" and always took place in the apartment's living room.

### 3. Defense Witnesses

Molina's wife, Carolyn, testified on Molina's behalf. Carolyn stated that B.C. called her over the telephone twenty-three times from August 2011 to September 2011. During these phone conversations, B.C. called her names and stated that Molina was having a baby with another woman. Carolyn stated that Molina never showed any unusual interest in children.

Finally, Molina testified. Molina denied all of the allegations and stated that E.R. was a compulsive liar and was afraid of her mother, who was physically abusive toward her.

6

### 4.  Verdict and Punishment

After the three-day trial, the jury returned a guilty verdict.   The trial court decided punishment and sentenced Molina to fifty years' imprisonment in the Texas Department of Criminal Justice—Institutional Division.   This appeal ensued.

## II.       SUFFICIENCY CHALLENGE

By his first issue, Molina asserts that the evidence is insufficient to sustain his conviction for continuous sexual abuse of a young child.

### A.       Standard of Review and Applicable Law

When reviewing a defendant's sufficiency challenge, we view the evidence in the light most favorable to the verdict to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012) (citing *Brooks v. State*, 323 S.W.3d 893, 902 (plurality op.)); *see Jackson v. Virginia*, 443 U.S. 307, 319 (1979).   The jury is the sole judge of the credibility of witnesses and the weight to be given to their testimonies, and the reviewing court must not usurp this role by substituting its own judgment for that of the jury.   *Montgomery*, 369 S.W.3d at 192.   Thus, our duty is "simply to ensure that the evidence presented supports the jury's verdict and that the State has presented a legally sufficient case of the offense charged."   *Id.* (internal citations omitted).   When faced with a record supporting contradicting inferences, we must presume that the jury resolved such conflicts in favor of the verdict, even if not explicitly stated in the record.   *Id.* (citing *Brooks*, 323 S.W.3d at 899 n.13).

The elements of the offense are measured as defined by a hypothetically correct jury charge.   *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing

*Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.*

Under a hypothetically correct jury charge, a person is guilty of continuous sexual abuse of a young child if: (1) during a period that is thirty or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and (2) at the time of the commission of each of the acts of sexual abuse, the actor is seventeen years of age or older and the victim is a child younger than fourteen years of age. *See* TEX. PENAL CODE ANN. § 21.02(b).

"Acts of sexual abuse" can be any act that violates the various penal laws as outlined in section 21.02(c). *See id.* § 21.02(c). Among the laws outlined in section 21.02(c), and applicable to this case, are: (1) indecency with a child[4] under [penal

---

[4] A person commits the offense of indecency with a child if, with a child younger than 17 years of age . . . the person:

(1) engages in sexual contact with the child or causes the child to engage in sexual contact; or

(2) with intent to arouse or gratify the sexual desire of any person:

(A) exposes the person's anus or any part of the person's genitals, knowing the child is present; or

(B) causes the child to expose the child's anus or any part of the child's genitals.

TEX. PENAL CODE ANN. § 21.11(a) (West 2011). "Sexual contact" means the following acts, if committed with the intent to arouse or gratify the sexual desire of any person: (1) any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child; or (2) any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person. *Id.* § 21.11(c).

code section 21.11(a)(1), if the actor committed the offense in the manner other than by touching the breast of a child through clothing, *see id.* § 21.02(c)(2); and (2) aggravated sexual assault.[5]   *See id.* § 21.02(c)(4).

## B.    Discussion

Molina first argues that the evidence is insufficient because neither N.H. nor E.R. could testify as to when exactly the alleged abuse occurred and how many times the acts might have occurred.   This argument is unpersuasive.   The indictment in this case alleges that Molina committed the offense from September 15, 2007 through February 15, 2012.   When an indictment alleges that a crime occurred "on or about" a certain date, the State may prove an offense "with a date other than the one specifically alleged so long as the date is anterior to the presentment of the indictment and within the statutory limitation period and the offense relied upon otherwise meets the description of the offense contained in the indictment."   *Ketchum v. State*, 199 S.W.3d 581, 589 (Tex. App.—Corpus Christi 2006, pet. ref'd) (citing *Yzaguirre v. State,* 957 S.W.2d 38, 39 (Tex. Crim. App. 1997) (en banc)).   Furthermore, the primary purpose of specifying a date in

---

[5] A person commits the offense of aggravated sexual assault, in relevant part, if the person intentionally or knowingly:

(i)      causes the penetration of the anus or sexual organ of a child by any means;

(ii)     causes the penetration of the mouth of a child by the sexual organ of the actor;

(iii)    causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor;

(iv)    causes the anus of a child to contact the mouth, anus, or sexual organ of another person, including the actor; or

(v)     causes the mouth of a child to contact the anus or sexual organ of another person, including the actor; and if

the victim is younger than fourteen years of age.

*Id.* § 22.021(a).

9

the indictment is not to notify the accused of the date of the offense but rather to show that the prosecution is not barred by the statute of limitations. *Garcia v. State*, 981 S.W.2d 683, 686 (Tex. Crim. App. 1998) (en banc); *Ketchum*, 199 S.W.3d at 589.

In this case, the record shows that N.H. was born in January 1997. N.H. testified that Molina's abuse began when she was ten years old. Later, under cross-examination, N.H. narrowed the timeframe and stated that all of the abuse took place when she was age ten until age eleven. Detective Isle also testified that N.H. outcried that the last incident of abuse against her by Molina took place approximately two weeks prior to the interview.

Furthermore, testimony from B.C. and E.R. shows that Molina's alleged abuse against E.R. took place from late August/early September of 2011 until the cellular phone incident in February 2012, while Molina was age eleven. With regard to the amount of times of the abuse, E.R. estimated the number of times Molina abused her at "more than five or ten," and N.H. cited three specific incidents of abuse by Molina.

Next, Molina argues that the record is devoid of any medical, forensic, or scientific evidence to support his conviction. Molina asserts that the State's case is instead based "solely on the testimony of the victims, whose testimony was shown to be unreliable at best." Molina's assertion that the State must use "medical, forensic, and scientific evidence" to sustain his conviction is unfounded and without authority. The law is clear that testimony of a single witness may be sufficient to support a felony conviction. *Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971); *see Hohn v. State*, 538 S.W.2d 619, 621 (Tex. Crim. App. 1976) (holding that a conviction may be had upon the uncorroborated testimony of a child witness). Additionally, courts give

wide latitude to testimony given by child victims of sexual abuse. *Ketchum*, 199 S.W.3d at 590 (citing *Villalon v. State*, 791 S.W.2d 130, 133–34 (Tex. Crim. App. 1990)). Finally, any issues of reliability, credibility, and weight to be given to testimony are left to the jury, and will not be second-guessed by this Court. *Montgomery*, 369 S.W.3d at 192.

As outlined above, N.H. and E.R. testified in graphic detail about Molina's sexual abuses against them. N.H. specifically told the jury about (1) Molina touching her breast and vagina, inside and outside of her bathing suit, in the swimming pool; (2) Molina masturbating in front of her while watching television, and later inserting his penis inside of her vagina that day; and (3) Molina touching her "private area" as she played a game on her computer. E.R. told the jury specifically about how Molina kissed her on Thanksgiving Day 2011, and also about how he inserted his penis inside of her anus on multiple occasions at the family's apartment. N.H. and E.R. both testified that these acts of abuse took place while these girls were approximately ten to eleven years-old.

Accordingly, after examining the evidence in a light most favorable to the verdict, we conclude that any rational trier of fact could have found the essential elements that Molina committed continuous sexual abuse of young child beyond a reasonable doubt. *Id.* Molina's first issue is overruled.

### III. LESSER-INCLUDED OFFENSES

By his second issue, Molina contends that the trial court erred by not including jury instructions on the lesser included offenses of aggravated sexual assault of a child and indecency with a child.

11

**A.     Standard of Review**

Whether a defendant is entitled to a lesser-included offense instruction requires a two-part analysis. *Goad v. State*, 354 S.W.3d 443, 446 (Tex. Crim. App. 2011) (citing *Hall v. State*, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007)). In the first step, we consider whether the offense contained in the requested instruction is a lesser-included offense of the charged offense. *Goad*, 354 S.W.3d at 446. If so, we must decide whether the admitted evidence supports the instruction. *Id.*

The evidence supports an instruction on a lesser-included offense if it permits a rational jury to find the defendant guilty only of the lesser-included offense. *Rice v. State*, 333 S.W.3d 140, 145 (Tex. Crim. App. 2011). There must be some evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted. *Goad*, 354 S.W.3d at 446. In this review, we consider all of the evidence admitted at trial, not just the evidence presented by the defendant. *Id.* The evidence must establish that the lesser-included offense is a valid, rational alternative to the charged offense. *Rice*, 333 S.W.3d at 145. Anything more than a scintilla of evidence is sufficient to entitle a defendant to a lesser charge. *Goad*, 354 S.W.3d at 446. Finally, we may not consider in this review the credibility of the evidence and whether it conflicts with other evidence or is controverted. *Id.* at 446–47.

**B.     Discussion**

We first determine whether the offenses contained in the requested instruction—aggravated sexual assault of a child and indecency with a child—are lesser-included offenses of continuous sexual abuse of a young child. *See id.* at 446.

12

Both lesser-included offenses are listed offenses under section 21.02(c) of what constitutes an "act of sexual abuse." *See* TEX. PENAL CODE ANN. § 21.02(c)(2), (4). Accordingly, we conclude that the requested instructions of aggravated sexual assault of a child and indecency with a child are lesser-included offenses of continuous sexual abuse of a young child. *See Soliz v. State*, 353 S.W.3d 850, 854 (Tex. Crim. App. 2011) ("To the extent that a continuous-sexual-abuse indictment alleges certain specific offenses, an "offense listed under Subsection (c)" [of penal code section 21.02] will *always* meet the first step of" a lesser-included offense analysis (emphasis in original)).

Next, we turn to whether the admitted evidence supports an instruction of the lesser-included offenses. Molina first argues that the evidence shows that, at most, Molina was guilty of only one act of sexual abuse. In the alternative, Molina argues that the alleged acts did not occur in a period that is thirty or more days in duration. *See* TEX. PENAL CODE ANN. § 21.02(b)(1). We disagree with both arguments. As discussed more thoroughly in Part II-B of this opinion, legally sufficient evidence supports the jury's finding that Molina committed two or more acts of sexual abuse against N.H. and E.R over a period that was thirty days or more in duration. For example, N.H. testified to three separate incidents of sexual abuse committed by Molina against her during a period of time from when she was ten years-old until she turned eleven. E.R. also testified about Molina's acts of abuse and estimated the number of occurrences at more than five or ten. Furthermore, B.C. testified that she believed the acts of abuse toward E.R. took place from late August/early September of 2011 until the cellular phone incident in February 2012. B.H. also testified that N.H. told her that Molina's abuse took place over a "few months" time.

13

At trial, Molina denied all of the allegations made against him. This testimony by itself, however, does not rise to more than a scintilla of evidence sufficient to entitle Molina to a lesser charge of aggravated sexual assault or indecency with a child because such a denial is not germane to the requested instructions that at least one act of sexual abuse took place. Instead, Molina's denial creates a fact question of whether the alleged acts of sexual abuse took place at all. The record shows that no evidence at trial is directly germane to the lesser-included offenses for the jury to consider and warrant the requested instructions. *See Goad*, 354 S.W.3d at 446. As a result, the lesser-included offenses are not valid, rational alternatives to the charged offense. *See Rice*, 333 S.W.3d at 145. Accordingly, we conclude that the trial court did not err in denying Molina's requested lesser-included offense instructions. Molina's second issue is overruled.

## IV.    EXPERT TESTIMONY

By his final issue, Molina argues that the trial court erred by permitting nurse Sonja Eddleman to testify as an expert, despite the fact that she had not interviewed or examined N.H. or E.R. and had only reviewed their medical records.

## A.    Preservation of Error

As a threshold matter, we must first determine whether Molina properly preserved error for review. *See Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009) ("Preservation of error is a systemic requirement that a first-level appellate court should ordinarily review on its own motion."). Generally, error is preserved if the record shows that (1) a specific complaint was made to the trial court by request, objection, or motion; and (2) the trial court ruled on the complaint or refused to rule and the party objected to

14

the refusal. *See* TEX. R. APP. P. 33.1(a). To be timely, an objection must be made as soon as the basis for the objection becomes apparent. *Lagrone v. State*, 942 S.W.2d 602, 618 (Tex. Crim. App. 1997) (en banc).

Here, Molina admits that he failed to raise an objection prior to nurse Eddleman testifying as an expert. Molina attempts to excuse his failure to object by invoking the federal "plain error" doctrine. *See Delgado v. State*, 235 S.W.3d 244, 250 (Tex. Crim. App. 2007) (discussing that federal courts "will occasionally apply the 'plain error' doctrine to reverse a conviction in the absence" of a party's request for a limiting instruction).

The traditional term in Texas criminal law that corresponds to "plain error" is "fundamental error." *Jimenez v. State*, 32 S.W.3d 233, 238 (Tex. Crim. App. 2000) (citing *Almanza v. State*, 686 S.W.2d 157, 172 (Tex. Crim. App. 1984) (en banc), and its application of the fundamental error doctrine to charge errors). The Texas Court of Criminal Appeals has declined, however, to apply the fundamental error doctrine to evidentiary challenges regarding the admissibility of expert testimony. *See Fuller v. State*, 253 S.W.3d 220, 232–33 (Tex. Crim. App. 2008). Instead, the court of criminal appeals opted for the more common general objection standard to preserve error. *See id.* at 232 ("We have consistently held that the failure to object in a timely and specific manner during trial forfeits complaints about the admissibility of evidence."); *see also* TEX. R. APP. P. 33.1(a). We find no reason to stray from the analysis articulated in *Fuller* and conclude that Molina's failure to object waived appellate review of any error associated with nurse Eddleman's testimony. *See Fuller*, 253 S.W.3d at 232–33. We overrule Molina's final issue.

## V. CONCLUSION

The trial court's judgment is affirmed.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
15th day of August, 2013.