

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1169-11

**JERI DAWN MONTGOMERY, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTEENTH COURT OF APPEALS
### HARRIS COUNTY

**JOHNSON, J., delivered the opinion for a unanimous Court.**

### O P I N I O N

Appellant caused a three-car collision, during which a passenger in one of the other vehicles was killed. The grand jury indicted appellant for criminally negligent homicide, alleging that she had made an unsafe lane change and had failed to keep a proper lookout. A petit jury found appellant guilty and also found that appellant's vehicle was a deadly weapon. The jury assessed punishment of ten years' confinement in the Texas Department of Criminal Justice, probated for ten years, and a $10,000 fine. On appeal, the Fourteenth Court of Appeals found the evidence

insufficient to sustain the conviction and rendered a judgment of acquittal.[1] This Court granted the four grounds raised in the state's petition for discretionary review.

> 1. The court of appeals erred in holding that "cell phone usage while operating a vehicle" does not constitute morally blameworthy conduct and does not justify criminal sanctions.

> 2. The court of appeals erred in presuming that the negligent act in a criminally negligent homicide must itself be an illegal act.

> 3. The court of appeals erred in holding that the evidence was insufficient to prove criminally negligent homicide where the appellant was traveling less than 39 miles per hour and was 92 feet past the interstate highway entrance ramp at the time that she attempted to cross in front of other vehicles to enter the freeway.

> 4. The court of appeals erred in holding that the evidence was insufficient to prove criminally negligent homicide where the appellant was admittedly distracted by talking on a cell phone at the time that she attempted to cross in front of other vehicles to enter the interstate highway ramp, which she had already missed by 92 feet.

After review, we find that the evidence was legally sufficient to sustain appellant's conviction for criminally negligent homicide, and we reverse the judgment of the court of appeals.

**Facts**

At approximately 8:30 p.m. on March 24, 2008, appellant was driving her mid-size SUV in the center lane of the three-lane service road adjacent to Interstate Highway 45 (IH-45) and talking on her cell phone. After hanging up the phone, appellant realized that she had missed the entrance ramp to IH- 45, which diverged from the left lane of the service road. Appellant abruptly swerved into the left lane to try to get onto the ramp, even though the beginning of the solid-white-lined area on the pavement between the ramp and the service road, often known as the "safety barrier," was behind her. There was disagreement at trial between the state's and appellant's experts as to how

---

[1] *Montgomery v. State*, 346 S.W.3d 747 (Tex. App.—Houston [14th Dist.] June 2, 2011, pet. granted).

far past the entrance ramp appellant was when she changed lanes, but they agreed that it was after the safety barrier began. The state's expert testified that it was 92 feet past the entrance to the ramp; appellant's expert estimated a lesser distance.

As appellant moved abruptly into the left lane, she cut off Cochise Willis, who was driving his three-quarter-ton pickup truck in the left lane of the service road. Willis testified that he was driving at the speed limit–50 miles per hour–and that appellant was driving more slowly than Willis when she moved into the left lane ahead of him. Willis tried to slow down and get into the center lane, but he could not avoid hitting the rear of appellant's SUV, slightly to the right of its center. At the time of impact, appellant's vehicle was almost entirely in the left lane, and Willis's truck was over the dividing line between the left and center lanes. The collision caused appellant's vehicle to rotate in a counterclockwise direction, crossing over the safety barrier and onto the entrance ramp itself. The front of appellant's SUV struck the passenger side of Terrell Housley's pickup truck, which had just been driven onto the entrance ramp. Chance Wilcox was a passenger in the truck. After the collision, Housley's truck rotated clockwise, causing it to hit the curb that separates the entrance ramp and the safety barrier and flip over, coming to a stop upside down. As Housley's truck flipped, Wilcox was ejected, and he died at the scene from trauma to his head and neck. At the same time, the collision with Housley's truck caused appellant's SUV to flip onto its left side and skid to a stop. Willis never lost control of his truck. He pulled into the emergency lane of the service road and stopped.

## The Court of Appeals's Opinion

The court of appeals found that the evidence was insufficient to establish the requisite *mens rea* of criminal negligence, noting that

the State presented evidence of appellant's use of a cell phone while driving, her unsafe lane change, and her failure to maintain a proper lookout. Only one of the three factors was a moving violation under Texas Law: making an unsafe lane change. However, the State placed primary emphasis on a factor that was not even listed in the indictment as proof of appellant's negligence: cell phone usage. . . . [B]y continuing that emphasis in this appeal, the State encourages this court to legislate through judicial fiat. Except under very limited circumstances not at issue in this case, using a cell phone while driving is not an illegal activity in Texas.[2]

Focusing on the prosecution's presentation of cell-phone use as a primary factor establishing appellant's criminally negligent behavior, the court of appeals found that the state introduced no competent evidence that cell-phone use while driving increases the risk of fatal accidents and held that, without evidence that such a risk was generally known and disapproved of in the community, no reasonable fact finder could find that using a cell phone while driving turned a simple moving violation into criminally negligent homicide. Thus, the state had failed to establish that appellant ought to have been aware of a substantial and unjustifiable risk that death would result from her actions and that her failure to perceive such a risk was a gross deviation from the standard of ordinary care.

The state argues that, had the court of appeals used the correct standard of review and viewed the evidence in the light most favorable to the verdict, the court would have concluded that the evidence was legally sufficient to sustain the conviction. The state contends that the court of appeals relied on two incorrect theories of law: (1) cell-phone use while driving does not constitute morally blameworthy conduct and therefore does not justify criminal sanctions; and (2) the negligent act in a criminally negligent homicide must itself be an illegal act. The state contends that the court of appeals required evidence of an increased risk of fatal crashes from cell-phone use, but such a risk

---

[2] *Id*. at 752-753.

is generally known and disapproved of in the community; the dangers of driving while talking on a cell phone have been well known for years and has even been criminalized in certain situations by the Texas Legislature. And even though appellant violated at least one traffic law when she made an unsafe lane change into the left lane, it is not the law in Texas that the negligent act must be illegal.

## Sufficiency of the Evidence

The state's third and fourth grounds for review challenge the court of appeals's sufficiency review of the evidence. When reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[3] The jury is the sole judge of the credibility of witnesses and the weight to be given to their testimonies, and the reviewing court must not usurp this role by substituting its own judgment for that of the jury.[4] The duty of the reviewing court is simply to ensure that the evidence presented supports the jury's verdict[5] and that the state has presented a legally sufficient case of the offense charged.[6] When the reviewing court is faced with a record supporting contradicting inferences, the court must presume that the jury resolved any such conflicts in favor of the verdict, even if not explicitly stated in the record.[7]

---

[3] *Brooks v. State*, 323 S.W.3d 893, 902 n.19 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

[4] *Id.* at 899.

[5] *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

[6] *Id.* at 753-754.

[7] *Brooks,* 323 S.W.3d at 900 n.13 (citing *Jackson*, 443 U.S. at 326).

To make a legally sufficient showing of criminally negligent homicide, the state must prove that (1) appellant's conduct caused the death of an individual; (2) appellant ought to have been aware that there was a substantial and unjustifiable risk of death from her conduct; and (3) appellant's failure to perceive the risk constituted a gross deviation from the standard of care an ordinary person would have exercised under like circumstances.[8] The circumstances are viewed from the standpoint of the actor at the time that the allegedly negligent act occurred.[9] Criminal negligence does not require proof of appellant's subjective awareness of the risk of harm, but rather appellant's awareness of the attendant circumstances leading to such a risk.[10] The key to criminal negligence is not the actor's being aware of a substantial risk and disregarding it, but rather it is the failure of the actor to perceive the risk at all.[11]

Conduct that constitutes criminal negligence involves a greater risk of harm to others, without any compensating social utility, than does simple negligence.[12] The carelessness required for criminal negligence is significantly higher than that for civil negligence; the seriousness of the negligence would be known by any reasonable person sharing the community's sense of right and wrong.[13] The risk must be "substantial and unjustifiable," the failure to perceive it must be a "gross

---

[8] *See Tello v. State*, 180 S.W.3d 150, 156 (Tex. Crim. App. 2005); *see also Graham v. State*, 657 S.W.2d 99, 101(Tex. Crim. App. 1983).

[9] *Tello*, 180 S.W.3d at 150 (Tex. Crim. App. 2005); *Graham*, 657 S.W.2d at 101.

[10] *Tello*, at 159 (Cochran, J., concurring).

[11] *Lewis v. State*, 529 S.W.2d 550, 553 (Tex. Crim. App. 1975).

[12] *Tello*, at 158-159 (Cochran, J., concurring).

[13] *Id.* at 158.

deviation" from reasonable care as judged by general societal standards.[14] "With criminal negligence, the defendant ought to have been aware of a substantial and unjustifiable risk that his conduct could result in the type of harm that did occur, and that this risk was of such a nature that the failure to perceive it was a gross deviation from the reasonable standard of care exercised by ordinary people." *Williams v. State*, 235 S.W.3d 742, 750-51 (Tex. Crim. App. 2007). The degree of deviation from reasonable care "is measured solely by the degree of negligence, not any element of actual awareness."[15] In finding a defendant criminally negligent, a jury is determining that the defendant's failure to perceive the associated risk is so great as to be worthy of a criminal punishment.[16]

After reviewing the record, we conclude that the state has met its burden of proving all of the elements of criminally negligent homicide. Appellant made an abrupt lane change in front of Willis's truck, causing that truck to strike the rear of appellant's SUV, and then causing her SUV to strike Housley's truck, from which Wilcox was ejected and died. The state has thus shown that appellant, by making an unsafe lane change, caused the death of Wilcox.

The state has also proved that appellant ought to have been aware of the substantial and unjustifiable risk created by her conduct. The court of appeals, focusing on her cell-phone use, found that the state had not proved that appellant ought to be aware of the risk present because the state did not present evidence that cell-phone use while driving poses a risk to others. However, the indictment made no mention of use of a cell phone. Rather, the indictment alleged that appellant

---

[14] *Id.*

[15] *Tello*, at 158.

[16] *See id.*

caused Wilcox's death by making an unsafe lane change and failing to maintain a proper lookout when she made that lane change. Nor did the jury charge mention appellant's use of a cell phone. The jury charge read,

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 24th day of March, 2008, in Harris County, Texas, the defendant, Jeri Dawn Montgomery, did then and there unlawfully, cause the death of Chance Wilcox, by criminal negligence, namely, while operating a motor vehicle, making an unsafe lane change and failing to keep a proper lookout, causing the defendant's vehicle to collide with a motor vehicle occupied by Chance Wilcox, then you will find the defendant guilty of criminally negligent homicide, as charged by the indictment.[17]

Through the testimony of its witnesses and experts, and by cross-examination of appellant's witnesses and experts, the state presented evidence that: appellant was driving her SUV on the access road of IH-45; the speed limit was 50 miles per hour; appellant was driving more slowly than surrounding traffic; appellant was up to 92 feet past the beginning of the entrance ramp onto IH-45 when she abruptly changed lanes; appellant did not signal the lane change or look for other vehicles approaching in the left lane; and appellant intended to enter IH-45 via the entrance ramp that she had already passed. The state also presented evidence that, just before the accident, appellant was driving and talking on her cell phone and that appellant admitted using the cell phone had distracted her. As Justice Hudson pointed out in his dissent in the court of appeals, the state had no burden to show that driving while using a cell phone is always risky or dangerous, or that it, of itself, creates a substantial and unjustifiable risk, only that appellant's use of a cell phone *in this case* created a substantial and unjustifiable risk because it interfered with her ability to maintain a proper lookout for other vehicles.[18]

---

[17] I C.R. at 327.

[18] *Montgomery*, 346 S.W.3d at 756 (Hudson, J., dissenting)(emphasis added).

Given these circumstances, we find that a jury could have reasonably concluded that appellant ought to have been aware of the substantial and unjustifiable risk created by her actions. Appellant was driving at speeds high enough to be lethal, should a collision occur. It is common knowledge that failing to maintain a proper lookout and making an unsafe lane change without signaling or checking for upcoming traffic poses a great risk to other drivers on that road and that anyone sharing the general community's sense of right and wrong would be aware of the seriousness of doing so.

Finally, we hold that the jury could have reasonably found that appellant's failure to appreciate the substantial and unjustifiable risk, given the circumstances known to her at that time, was a gross deviation from a standard of care that an ordinary person would exercise under the same circumstances. The state presented evidence that appellant had missed the entrance ramp for the highway because she was distracted by talking on her cell phone. Further evidence indicated that, although appellant knew that she had missed the entrance ramp, she still attempted to move to the left lane, cut across the "safety barrier," and get onto the entrance ramp. Both the state's and appellant's accident reconstruction experts testified that appellant made an unsafe or "aggressive" lane change into the left lane and that Willis could not have avoided hitting appellant's vehicle. Willis testified that appellant was driving more slowly than surrounding traffic and did not signal or use her brakes before she changed lanes. From the evidence presented, the jury could have found that appellant failed to perceive the substantial and unjustifiable risk created by her conduct.

Appellant argues that her conduct was not a gross deviation from the ordinary standard of care and that she was subjected to criminal liability for a common traffic accident with fatal results. The court of appeals, again focusing on the lack of evidence presented regarding the dangers of

talking on a cell phone while driving, found that the use of a cell phone while driving was such common practice that it would be difficult for a rational fact finder to find it to be a gross deviation from the ordinary standard of care.

The court of appeals mistakes what conduct was alleged to constitute the gross deviation in this case. The gross deviation from the ordinary standard of care argued by the state in this case was not appellant's use of a cell phone, but rather that appellant made an unsafe lane change and failed to maintain a proper lookout, at least partly as a result of the distraction created by her use of the cell phone. The state was not required to present evidence of the dangers of using a cell phone while driving in order to carry its burden of proof, but such a use of a cell phone may be considered as a factor in determining whether a defendant grossly deviated from the ordinary standard of care. The question of whether appellant's conduct was a "gross deviation" is a question to be answered by the fact finder and here, a rational jury could conclude that it was. We sustain the state's third and fourth grounds for review.

## Cell Phone Use

In its first ground, the state argues that the court of appeals erred in holding that cell-phone use while driving does not constitute morally blameworthy conduct and does not justify criminal sanctions. The morally blameworthiness of cell-phone use while driving, by itself, is not the issue in this case, and we will therefore not address it. It is within the purview of the legislature, not the courts, to determine what does and does not justify criminal sanctions.[19] We dismiss the state's first

---

[19] In 2005, the legislature first enacted a law that governed use of cell phones; that law prohibited persons under the age of 18 years of age from driving while using a cell phone. *See* Act of June 17, 2005, 79th Leg., R.S., ch. 357, § 5, 2005 Tex. Sess. Law Serv. Ch. 357 (codified at TEX. TRANSP. CODE § 545.425). In 2009, the Legislature amended sections of the Transportation Code to state that, in very limited circumstances, criminal sanctions are appropriate for the use of a cell phone by persons of any age while driving. *See* TEX. TRANSP. CODE §§ 545.424-425 (2009). These circumstances are not present in this case, and, even if they were, the applicable amendments became

ground for review.

## Illegality of the Underlying Act

In its second ground, the state contends that the court of appeals erred in presuming that the negligent act in a criminally negligent homicide must itself be an illegal act. We do not read the court of appeals's opinion to presume that the underlying act must itself be illegal. In footnote 10, the court of appeals listed a number of clearly legal-yet-distracting activities that, under the proper circumstances, may cause negligent driving.[20] By including such a list, the court of appeals clearly did not presume that the negligent act must violate Texas law. Instead, in considering whether a finding of a gross deviation from the standard of care was supported by the record, the court of appeals mistakenly focused on the absence in the record of any fact witnesses or scientific studies showing that cell-phone use while driving increases the risk of fatal accidents. We overrule the state's second ground for review.

## Conclusion

We hold that the evidence was legally sufficient to support the jury's verdict of guilty of criminally negligent homicide. We vacate the judgment of the court of appeals and remand the cause to the court of appeals so that it may address appellant's remaining points of error.

Delivered: June 20, 2012
Publish

---

effective eighteen months after this incident.

[20] *Montgomery*, 346 S.W.3d at 753 n.10.