**Opinion filed March 26, 2015**



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00085-CR
_____

## RUBEN MONTES GARCES, Appellant
## V.
## THE STATE OF TEXAS, Appellee

**On Appeal from the 118th District Court**

**Glasscock County, Texas**

**Trial Court Cause No. 432**

## M E M O R A N D U M   O P I N I O N

Ruben Montes Garces appeals his jury convictions for two counts of criminally negligent homicide. Appellant caused a two-vehicle collision that resulted in the death of both the driver and the passenger of the other vehicle. The trial court assessed Appellant's punishment on each count at confinement for a term of 210 days in the State Jail Division of the Texas Department of Criminal Justice, with the sentences to be served concurrently. In his sole issue on appeal, Appellant challenges the sufficiency of the evidence to support his convictions. We affirm.

*Background Facts*

Appellant, a truck driver from Chihuahua, Mexico, was visiting the United States to test-drive vehicles for an employer to purchase. On July 3, 2012, Appellant was test-driving a tractor-trailer. Appellant picked up the tractor-trailer in Odessa and headed south. At approximately 5:30 p.m., Appellant was headed back toward Odessa on Farm Road 2401. Appellant came to the intersection of Farm Road 2401 and Farm Road 1357 in Glasscock County. Farm Road 2401 runs east to west, while Farm Road 1357 runs north to south. Farm Road 2401 has a stop sign, while Farm Road 1357 does not. Accordingly, Farm Road 1357 has the right-of-way for traffic. Appellant was traveling westbound on Farm Road 2401, while the pickup driven by Bryan Gregory McBride was traveling northbound on Farm Road 1357. Jacob Lee Power was the passenger in the pickup.

Appellant testified that he saw two water trucks and a white pickup on the road to his left when he approached the intersection. Appellant testified as follows:

> We got to the stop sign. I looked to my right and I looked to my left. The -- far away, there were two trucks, what you call here two water trucks. And next to them, there was a white pickup. There was enough distance for me to allow me to cross. It was a matter of seconds. It was really quick. . . .
>
> . . . So when I -- when I was crossing, I turned around and I saw and I glanced, and I turned around and I saw that it was the white pickup coming. And I was trying to think to myself if I have enough time to cross. And I couldn't figure out why the pickup was so close because the two of the water trucks were still quite behind it.

Appellant testified that, near the time of impact, he was able to see two young men in the pickup from roughly 100 meters away. The pickup hit the bed of the trailer near the front two axles, and the cab of the pickup was crushed. Both McBride and Power were pronounced dead at the scene. The State and Appellant

stipulated that the collision between Appellant's tractor-trailer and the pickup was the cause of death of McBride and Power.

Alfonso Quiniones, a passenger in the tractor-trailer, testified that he was not "100 percent sure if [Appellant] did make the stop. . . . [B]ut I do recall him slowing down drastically." Quiniones then said that the tractor-trailer took off and then "that's when [Appellant] notices that he's not going to make it. He mentions something. That's when I noticed the truck, where he looked. I see the truck. I see the truck coming." Quiniones testified that Appellant tried to cross the intersection faster; Quiniones could feel the tractor-trailer accelerating. After the pickup hit the tractor-trailer, Quiniones called 911.

Trooper Kenneth Dean Reed Jr. with the Texas Highway Patrol testified that he conducted an accident investigation when he arrived on the scene. Trooper Reed testified that, in his opinion, "the cause of this accident was that semi truck failed to yield the right-of-way." Trooper Reed said that Appellant "failed to yield right-of-way of the stop sign and pulled out in front of the vehicle and was struck." Trooper Reed testified that a witness at the scene gave him a statement that said:

> [I] saw a semi truck go through the intersection westbound on 2401, saw a cloud of dirt in the air, and the truck looked to have problems. I drove up into the intersection and saw a white pickup hit the semi truck in the rear of the truck. The truck -- semi truck ran the stop sign.

*Analysis*

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a

3

reasonable doubt.  *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).  We consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted.  *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  In conducting a sufficiency review, we defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded.  *Brooks*, 323 S.W.3d at 899.  "This standard accounts for the factfinder's duty 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Clayton*, 235 S.W.3d at 778 (quoting *Jackson*, 443 U.S. at 319).  When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and defer to that determination.  *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

Appellant argues that the evidence is insufficient to support his conviction because his conduct did not carry "a substantial and unjustifiable risk of death." He focuses his argument on the purported lack of evidence of the information available to Appellant at the time he entered the intersection.  Specifically, he contends that there is no evidence of the speed of the victims' pickup when Appellant committed to crossing the intersection or its distance from the intersection at that time.

Section 19.05(a) of the Texas Penal Code provides that "[a] person commits an offense if he causes the death of an individual by criminal negligence."  TEX. PENAL CODE ANN. § 19.05(a) (West 2011).  Section 6.03(d) of the Texas Penal Code defines the culpable mental state of criminal negligence as follows:

> A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will

occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

*Id.* § 6.03(d). To make a legally sufficient showing of criminally negligent homicide, the State must prove that (1) the defendant's conduct caused the death of an individual, (2) the defendant ought to have been aware that there was a substantial and unjustifiable risk of death from his or her conduct, and (3) the defendant's failure to perceive the risk constituted a gross deviation from the standard of care an ordinary person would have exercised under like circumstances. *Montgomery v. State*, 369 S.W.3d 188, 192–93 (Tex. Crim. App. 2012). We view the circumstances from the standpoint of the actor at the time that the allegedly negligent act occurred. *Id.* at 193. Criminal negligence does not require proof of the defendant's subjective awareness of the risk of harm, but rather the defendant's awareness of the attendant circumstances leading to such a risk. *Id.* The key to criminal negligence is not the defendant being aware of a substantial risk and disregarding it, but rather it is the failure of the defendant to perceive the risk at all. *Id.*

"Conduct that constitutes criminal negligence involves a greater risk of harm to others, without any compensating social utility, than does simple negligence." *Id.* Criminal negligence requires a significantly higher degree of carelessness than civil negligence; any reasonable person sharing the community's sense of right and wrong would know the seriousness of the negligence. *Id.* The risk must be "substantial and unjustifiable," and the failure to perceive it must be a "gross deviation" from reasonable care as judged by general societal standards. *Id.*

With criminal negligence, the defendant ought to have been aware of a substantial and unjustifiable risk that his conduct could result in the type of harm that did occur, and that this risk was of such a nature that

5

the failure to perceive it was a gross deviation from the reasonable standard of care exercised by ordinary people.

*Id.* (quoting *Williams v. State*, 235 S.W.3d 742, 750–51 (Tex. Crim. App. 2007)) (internal quotation marks omitted). "The degree of deviation from reasonable care 'is measured solely by the degree of negligence, not any element of actual awareness.'" *Id.* (quoting *Tello v. State*, 180 S.W.3d 150, 158 (Tex. Crim. App. 2005) (Cochran, J., concurring)). When a jury finds a defendant criminally negligent, it determines that the defendant's failure to perceive the associated risk is so great as to be worthy of a criminal punishment. *Id.*

After reviewing the record, we conclude that the State has met its burden of proving all the elements of criminally negligent homicide. Appellant correctly identifies the relevant time for our inquiry as the time that the allegedly negligent act occurred. *Id.* The indictment alleged that Appellant caused the death of the decedents "by operating a tractor-trailer and disregarding a stop sign, and failing to yield the right of way." The application paragraphs of the jury charge also contained this allegation. Accordingly, we direct our analysis to the facts in existence at the time Appellant made the decision to proceed through the intersection.

Appellant testified that he "came to a full and complete stop" at the intersection. However, another witness testified that he did not stop. Irrespective of this discrepancy, the critical decision made by Appellant was his decision to proceed through the intersection at the time that he did rather than waiting until all oncoming traffic cleared the intersection. Appellant testified that he looked both ways prior to entering the intersection and that he saw the victims' pickup approaching the intersection. Specifically, he testified that he saw their pickup from "afar" at the intersection. Appellant obviously miscalculated the speed and

6

distance of the victims' pickup because he was unable to clear the intersection prior to the victims' pickup striking his tractor-trailer.

The evidence is sufficient to show that Appellant should have been aware of the substantial and unjustifiable risk created by his conduct. Appellant was driving a large tractor-trailer. He entered the intersection after observing oncoming traffic traveling at a high rate of speed, including observing the victims' pickup from "afar." The posted speed limit for cross traffic at the intersection was seventy miles per hour. Entering an intersection in a large tractor-trailer when there is oncoming traffic traveling at a high rate of speed poses a great risk to the other drivers on the road. Appellant should have been aware of the seriousness of entering the intersection ahead of oncoming traffic that he observed. The jury could have reasonably found that Appellant's failure to appreciate the substantial and unjustifiable risk, given the circumstances known to him at that time, was a gross deviation from the standard of care that an ordinary person would exercise under the same circumstances. *See id.* at 194. Accordingly, the evidence was legally sufficient to support the jury's guilty verdicts of criminally negligent homicide. We overrule Appellant's sole issue.

*This Court's Ruling*

We affirm the judgments of the trial court.


JOHN M. BAILEY

JUSTICE

March 26, 2015

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.