**Affirmed and Opinion Filed October 25, 2016**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-15-00869-CR**

**ROBERT LEE CHURCHILL, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 296th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 296-80939-2014**

# MEMORANDUM OPINION
Before Chief Justice Wright, Justice Fillmore, and Justice Brown
Opinion by Chief Justice Wright

Robert Lee Churchill appeals his conviction for criminally negligent homicide. *See* TEX. PENAL CODE ANN. § 19.05 (West 2011). In a single issue, appellant contends the evidence is legally insufficient to support the conviction. We affirm the trial court's judgment. Because all dispositive issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.2(a), 47.4.

## I. FACTUAL AND PROCEDURAL CONTEXT

E.C., a four-year-old child, died in a collision on U.S. Highway 75 on January 11, 2014. E.C. was one of three passengers in a car driven by her mother ("Mother") in the high-occupancy vehicle (HOV) lane traveling northbound. Appellant was also driving northbound on Highway 75 in his blue Dodge pickup truck in the left lane next to the HOV lane. Appellant suddenly

pulled into the HOV lane over a barrier of pylons that separated the HOV lane from the highway. Appellant's truck collided with Mother's approaching car. Mother's car then hit the median wall and a light pole and flipped over. The parties stipulated that the collision caused E.C.'s death.

Appellant was indicted for the offense of criminally negligent homicide. The indictment stated that appellant had caused a collision and the death of an individual by (1) failing to control speed while operating a motor vehicle; (2) failing to keep a proper lookout while driving a motor vehicle; (3) making an unsafe lane change; and (4) taking faulty evasive action while operating a motor vehicle.

Appellant pleaded not guilty and the case proceeded to trial before the court. Three eyewitnesses testified for the State at trial, as well as Mother and two police officers who investigated the accident. Three of the four passengers in appellant's truck at the time of the collision testified on appellant's behalf. Testimony from these witnesses established that appellant was driving in heavy traffic, approaching an area where the traffic was slowing down further. The slowdown was visible from a distance. Yolanda Payton, a passenger in a nearby car, observed appellant "cutting in and out of the lane" as they approached the slowdown, and then saw him "veer" into the HOV lane. Micah Hedges, who was driving southbound in the HOV lane, testified that appellant made "a pretty aggressive move" into the HOV lane before striking Mother's car. The driver immediately behind appellant, Domingo Cruz, could see Mother's car approaching in the HOV lane. Cruz saw appellant enter the HOV lane. He yelled "go, go, go" immediately before the collision, observing appellant's "slow entry" into the HOV lane and the speed of Mother's approaching car. Mother recalled seeing appellant's truck "just come in" to the HOV lane "all of a sudden." Cruz testified he "saw the impact happen," observing Mother's car hit the median wall, launch into the air, hit a light pole, and flip over. Cruz and others stopped, as did appellant. Emergency personnel and police arrived, including

Officer James Forsythe of the Plano Police Department. Forsythe talked to appellant, who said that when traffic slowed down suddenly, he "took evasive action into the HOV lane" so as not "to slam into the back of the vehicles in front of him." Forsythe determined that appellant's truck was the cause of the collision.

Appellant's passengers each testified that appellant was not driving erratically. Two of the three passengers testified they thought appellant was trying to avoid hitting the car in front of them by swerving into the next lane.

Cruz and Mother both testified that they had often seen drivers pull into the HOV lane over the pylons to avoid traffic. Cruz testified he saw it "every day," and Mother testified she had seen it "often" and had even done so herself, although not since the collision.

The trial court found appellant guilty of criminally negligent homicide. The court sentenced appellant to two years' confinement in the state jail, probated for three years. Appellant now challenges the sufficiency of the evidence to support his conviction, alleging that the State presented no evidence on the essential element of "criminal negligence."

## II. SUFFICIENCY OF THE EVIDENCE

### A. Applicable Law and Standard of Review

In reviewing a challenge to the sufficiency of the evidence, we examine all the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Robinson v. State*, 466 S.W.3d 166, 172–73 (Tex. Crim. App. 2015) (applying *Jackson* standard to review of evidence after bench trial). The trier of fact is the sole judge of the witnesses' credibility and the weight to be given their testimony. *See Jackson*, 443 U.S. at 326.

A person commits the offense of criminally negligent homicide if the person causes the death of an individual by criminal negligence. TEX. PENAL CODE ANN. § 19.05(a). Section 6.03(d) of the Texas Penal Code defines the culpable mental state of criminal negligence:

> A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

TEX. PENAL CODE ANN. § 6.03(d) (West 2011). To make a legally sufficient showing of criminally negligent homicide, the State must prove: (1) the defendant's conduct caused the death of an individual; (2) the defendant ought to have been aware that there was a substantial and unjustifiable risk of death from his conduct; (3) the defendant's failure to perceive the risk constituted a gross deviation from the standard of care an ordinary person would have exercised under like circumstances. *Montgomery v. State*, 369 S.W.3d 188, 192–93 (Tex. Crim. App. 2012). The circumstances are viewed from the standpoint of the actor at the time that the allegedly negligent act occurred. *Id.* at 193.

Criminal negligence does not require proof of appellant's subjective awareness of the risk of harm, but rather appellant's awareness of the attendant circumstances leading to such a risk. *Id.* The key to criminal negligence is not the actor's being aware of a substantial risk and disregarding it, but rather the failure of the actor to perceive the risk at all. *Id.* In *Montgomery*, the court explained:

> Conduct that constitutes criminal negligence involves a greater risk of harm to others, without any compensating social utility, than does simple negligence. The carelessness required for criminal negligence is significantly higher than that for civil negligence; the seriousness of the negligence would be known by any reasonable person sharing the community's sense of right and wrong. The risk must be "substantial and unjustifiable," the failure to perceive it must be a "gross deviation" from reasonable care as judged by general societal standards. "With criminal negligence, the defendant ought to have been aware of a substantial and

unjustifiable risk that his conduct could result in the type of harm that did occur, and that this risk was of such a nature that the failure to perceive it was a gross deviation from the reasonable standard of care exercised by ordinary people." *Williams v. State,* 235 S.W.3d 742, 750–51 (Tex. Crim. App. 2007). The degree of deviation from reasonable care "is measured solely by the degree of negligence, not any element of actual awareness." In finding a defendant criminally negligent, a jury is determining that the defendant's failure to perceive the associated risk is so great as to be worthy of a criminal punishment.

*Id.* at 193 (footnotes omitted).

## B.    Application of Law to Facts

Appellant contends there was no evidence of the second element of criminal negligence identified in *Montgomery*, that he ought to have been aware there was a substantial and unjustifiable risk of death—not of an accident or an injury—by changing lanes into the HOV lane.  *See id.*   He also contends there was no evidence to support the third element of criminal negligence, that his failure to perceive a risk of death—not of accident or injury—constituted a gross deviation from the standard of care an ordinary person would have exercised under like circumstances.  *See id.*   He argues that the evidence established conclusively the opposite of these two elements:  his actions did not constitute a gross deviation from the standard of care that an "ordinary person" would have exercised under like circumstances.  *See id.*   Appellant relies on Mother's testimony that "(1) people cut into the HOV lane a lot, (2) she has cut into the HOV lane herself, and (3) everybody cuts into the HOV lane."  He argues that this testimony was not contradicted by any other evidence. Therefore, there was no evidence of "a gross deviation from reasonable care as judged by general societal standards."  *Id.*

Appellant also argues there is no evidence that the four specific instances of negligence listed in the indictment (failing to control his speed, failing to keep a proper lookout, making an unsafe lane change, and taking a faulty evasive action) caused the accident "independently" of the specific conduct alleged, his "suddenly entering the HOV lane to his immediate left, at which

time the vehicle in which the decedent was traveling in the HOV lane struck the [appellant's] vehicle."

The State responds that appellant was charged with criminal negligence by failing to control his speed so that he swerved suddenly into the next lane; by failing to maintain a proper lookout to see the car in the lane he swerved into; by making an unsafe lane change by pulling into an occupied lane; and by failing to take proper evasive action. The State argues the evidence was sufficient to support appellant's conviction for criminal negligence on each of these actions. The State contends it is therefore irrelevant whether or not illegally crossing into the HOV lane, by itself, constitutes negligence.

The State argues *Montgomery* presented a similar issue. In that case, the defendant was convicted of criminally negligent homicide as a result of an automobile collision. The defendant admitted using a cell phone while driving. The court of appeals reversed the conviction, concluding the evidence was legally insufficient to establish that the defendant ought to have been aware of a substantial and unjustifiable risk that death would result from her actions, or that her failure to perceive this risk was a gross deviation from the standard of ordinary care. The State introduced no evidence that cell phone usage while driving increased the risk of fatal accidents or that any greater risk was generally known and disapproved of in the community. Cell phone usage while driving was not illegal, and defendant's cell phone usage was the only factor distinguishing her conduct from simple moving violations. *See Montgomery v. State*, 346 S.W.3d 747, 752–55 (Tex. App.—Houston [14th Dist.] 2011), *rev'd*, 369 S.W.3d 188 (Tex. Crim. App. 2012).

The court of criminal appeals reversed, concluding the State had met its burden of proving all of the elements of criminally negligent homicide. *Montgomery*, 369 S.W.3d at 193. Neither the indictment nor the jury charge referred to the appellant's cell phone use. *Id.* at 194.

Instead, the indictment alleged that the appellant caused a person's death by making an unsafe lane change and failing to maintain a proper lookout. *Id.* The State proved that the appellant's unsafe lane change caused the person's death. *Id.* The State also proved that the appellant "ought to have been aware of the substantial and unjustifiable risk created by her actions." *Id.*

The court explained that the State "had no burden to show that driving while using a cell phone is always risky or dangerous, or that it, of itself, creates a substantial and unjustifiable risk, only that appellant's use of a cell phone *in this case* created a substantial and unjustifiable risk because it interfered with her ability to maintain a proper lookout for other vehicles." *Id.* The "gross deviation from the ordinary standard of care" was not appellant's use of the cell phone, "but rather that appellant made an unsafe lane change and failed to maintain a proper lookout, at least partly because of the distraction caused by her use of the cell phone." *Id.* at 195.

Similarly here, the State was not required to prove that "cutting into" the HOV lane is always dangerous "or that it, of itself, creates a substantial and unjustifiable risk." *See id.* at 194–95. The indictment did not refer to appellant's cutting into the HOV lane. The trial court, as finder of fact, could have found appellant guilty of the conduct alleged in the indictment based on the evidence offered at trial. The evidence showed that appellant failed to control his speed, took faulty evasive action, and failed to keep a proper lookout, resulting in the unsafe lane change that caused the collision. Moving too quickly for the slowing traffic, appellant attempted to avoid a collision by swerving into the HOV lane when Mother's car was approaching too rapidly to allow appellant a safe entry. The trial court could have reasonably found that appellant's failure to appreciate the substantial and unjustifiable risk, given the circumstances known to him at that time, was a gross deviation from a standard of care that an ordinary person would exercise under the same circumstances. *See id.* at 194. We overrule appellant's issue.

### III. CONCLUSION

We affirm the trial court's judgment.

                    /Carolyn Wright/
                    CAROLYN WRIGHT
                    CHIEF JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
150869F.U05



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

ROBERT LEE CHURCHILL, Appellant

No. 05-15-00869-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 296th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 296-80939-2014.
Opinion delivered by Chief Justice Wright;
Justices Fillmore and Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered October 25, 2016.