AFFIRM; and Opinion Filed April 26, 2017.



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-16-00331-CR

**BENITO PENA JR., Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 416th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 416-81691-2015**

## MEMORANDUM OPINION

Before Justices Francis, Lang-Miers, and Whitehill
Opinion by Justice Lang-Miers

Appellant Benito Pena Jr. appeals convictions for four counts of sexual assault of a child and two counts of indecency with a child. He contends the evidence is insufficient to support the convictions. We affirm the trial court's judgments.

BACKGROUND

The complainant, MC, was 16 years old when her mother began a relationship with appellant in late 2013. Soon thereafter appellant and Mother began living together in Mother's mother's (Grandmother's) house. Grandmother did not approve of the way in which appellant behaved toward Mother, which Grandmother characterized as physical, verbal, and emotional abuse. Grandmother asked appellant to leave about four months later. He did, but Mother and the children left with him and together they rented a home in another small town.

Around August 2014, appellant made a "weird" request of MC. He asked her to wear pantyhose to school under her clothes, without underwear, so he could sell them. Appellant told MC he wanted her "extremity juices [to] get all over them" and that if she wore them with underwear she would get a yeast infection. She wore the pantyhose under her jeans or leggings. When she got home from school, appellant wanted to see the pantyhose. He made her take her pants off and sit on the couch. He spread her legs and said the pantyhose were "wet" and made her take them off and give them to him. The next time this happened, MC said there was more "touching." Appellant rubbed his fingers on her vagina over the pantyhose. Then he ripped the pantyhose and put his fingers inside her vagina. She said his fingers were cold and it was "awkward" and she was "disgusted." She said he then "got oral," meaning "[h]e went down there [in her vagina] with his mouth." She said it felt "[g]ross." Then appellant got on top of her and had sex with her. MC described other incidents involving pantyhose and sexual assaults. At different times, appellant made her give him a "blow job," made her rub his penis, touched her vagina with his fingers, and had sex with her. Each time they smoked marijuana and sometimes drank alcohol, which MC described as "[b]ad decisions." MC said that from the beginning appellant took pictures of her wearing just the pantyhose and a shirt; he said he needed the pictures in order to sell the pantyhose. She never saw the pictures. Appellant told her she should not tell anyone because "it would ruin our lives" and "it would be [her] fault."

MC testified that the abuse stopped in January 2015 because appellant and Mother broke up. About three months later, she decided to tell Mother what happened because she "figured they were done," in other words, they "weren't getting back together at all" and she knew appellant "wasn't coming back" and she felt "safe enough to say something then." Mother took MC to Grandmother's house, and MC told Mother and Grandmother that appellant raped her. Grandmother called the police.

Officer Joshua Devore responded to the call. He took MC out on the porch away from Mother and Grandmother and talked to MC. He described MC's demeanor as "very frightened and physically crying, emotional." MC gave him "specific details about what happened to her." He testified that he was "surprised at the amount of details that she gave" him. MC "seemed very authentic, she was very emotional like it was traumatizing. She was reliving it when she was telling me about it."

MC also went to the Children's Advocacy Center where Lisa Martinez interviewed her for about an hour and a half. Martinez described the process of interviewing children and testified that she looked "for sensory details. What they felt, what they saw, what they heard, things like that. . . . I'm also looking for chronology within the incident that took place. . . . I'm looking for general details. Where did it happen? Who was the person that did it? Where was everyone else around? I'm also watching her demeanor and just how she's communicating with me through her body language." Martinez testified that MC gave her "many" general details about what happened and a chronology/date range, "multiple instances of things happening" with the ability to distinguish between those incidents, and she was able to keep those incidents straight when questioned about them later.

Sgt. Russell Driver, the lead investigator on the case, testified that he learned MC had kept some of the pantyhose. He collected the pantyhose as evidence and submitted a pair with a ripped crotch for DNA testing. The lab results showed the pantyhose contained skin cells belonging to MC and semen cells belonging to appellant. The probability of selecting an unrelated person who matched the skin cells or the semen cells was one in over the population of Earth.

The jury convicted appellant and sentenced him respectively to 16, 10, 14, and 10 years in prison on the sexual assault convictions, and 5 years on each indecency with a child

conviction.[1] The jury also assessed one $10,000 fine. In two issues on appeal, appellant argues that the evidence is insufficient to support the convictions.

## STANDARD OF REVIEW

We review a challenge to the sufficiency of the evidence under the well-established standards set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Wilson v. State*, 448 S.W.3d 418, 425 (Tex. Crim. App. 2014). We view the evidence in the light most favorable to the verdict and determine whether a rational factfinder could have found all the elements of the offense beyond a reasonable doubt. *Id*. "We will uphold the verdict unless a rational factfinder must have had reasonable doubt with respect to any essential element of the offense." *Id*. In our review, we are mindful that the jury is the sole judge of the credibility and weight of the evidence. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012).

## DISCUSSION

Appellant was convicted of four counts of sexual assault of a child under penal code section 22.011(a)(2)(A) and two counts of indecency with a child under penal code section 21.11(a)(1). *See* TEX. PENAL CODE ANN. §§ 21.11(a)(1), 22.011(a)(2)(A) (West 2011). Appellant does not challenge the evidence as to any specific element of these offenses. Instead, he argues that no rational jury could have convicted him beyond a reasonable doubt because, in essence, the evidence of his guilt was not credible.

For example, appellant cites evidence that Grandmother offered to pay MC to make false allegations against appellant. He argues Grandmother "was unsuccessful in her attempts to payoff MC until March 31, 2015" because Mother and appellant had an ongoing relationship and they "were all relying on Appellant in many, many way[s] and for many, many things[.]" Once

---

[1] The jury found appellant not guilty on one count of sexual performance by a child. *See* TEX. PENAL CODE ANN. § 43.25(d) (West 2016).

–4–

Mother and appellant were no longer together, however, he argues suddenly he was "a long-time rapist."

Appellant acknowledges that the jury is the sole judge of the credibility of the evidence, but he argues that this case is "quite uncommon" in that it involves "multiple and unrelated parties, reporting at different times about different events, that all share one glaring and troubling detail" and that is, that Grandmother hated appellant "so much that she had in the past and continued to the then current day encouraged MC to report false allegations of sexual abuse against her by Appellant so Appellant could be kicked out of the picture."

The jury heard the testimony and reviewed the evidence. The evidence was conflicting about what Grandmother did or said with regard to asking MC to falsely accuse appellant of sexually assaulting MC, and at the time MC told Mother and Grandmother about what appellant did to her, appellant was already "out of the picture." The jury obviously believed MC's testimony and the physical evidence and resolved the conflict in favor of the State. We will not second guess that decision as it turns on the credibility and weight of the evidence. *See Montgomery*, 369 S.W.3d at 192. We resolve appellant's two issues against him.

CONCLUSION

We affirm the judgments.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)

160331F.U05

–5–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BENITO PENA JR., Appellant

No. 05-16-00331-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 416th Judicial District Court, Collin County, Texas
Trial Court Cause No. 416-81691-2015.
Opinion delivered by Justice Lang-Miers.
Justices Francis and Whitehill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 26th day of April, 2017.