**Affirm and Opinion filed May 10, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-20-00302-CR**

**JEFFREY LEE PATTERSON, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 3**
**Dallas County, Texas**
**Trial Court Cause No. F-1945392-J**

## MEMORANDUM OPINION

Before Justices Osborne, Pedersen, III, and Reichek
Opinion by Justice Pedersen, III

A jury found appellant Jeffrey Lee Patterson guilty of murder and assessed his punishment at seventy years' confinement in the Texas Department of Criminal Justice, Institutional Division. In a single issue, appellant challenges the sufficiency of the evidence supporting the jury's verdict. We affirm.

### Background

Appellant and Ladonna Garcia dated on and off for a number of years. At the time of Garcia's death in 2019, she was living with appellant in his home. Video evidence at trial showed appellant picking Garcia up at a restaurant at approximately 12:45 a.m. on the morning of April 14. A second video then showed the couple

stopping at a convenience store shortly after 1:00 a.m. to purchase propane. They returned home and grilled steaks. Shortly after 3:00 a.m., a friend who lived nearby stopped at the house, and Garcia gave him a plate of food that he took home to eat. There is no evidence of any other person being at the house for the rest of that morning.

At 9:10 a.m., appellant called 911 and reported that Garcia had experienced a drug overdose. Emergency medical technicians arrived and found Garcia in the living room; she was not breathing, and her heart was not beating. The EMTs identified a wound they called a "hole" near her clavicle, attempted to revive her using a compression machine, and eventually took her to the hospital. Garcia never regained consciousness. The medical examiner testified that she suffered a number of recent injuries; she died as a result of a stab wound to her chest, which he ruled a homicide. The wound struck a major vein and Garcia's lung, and the medical examiner testified that a person who had suffered this wound would have died within an hour.

At the scene, appellant first told the EMTs he didn't know about Garcia's wound, but subsequently he told investigating officers that he had noticed it when Garcia went into the bathroom to take a shower. Still later, he told an officer that—sometime around 2:00 or 2:30 a.m.—Garcia had been bringing a plate of steaks into the house when she tripped, fell on a knife, and cut herself.

The police obtained a search warrant for the house. They found drops and smears of blood throughout the kitchen, living room, and bedroom. They also found significant amounts of blood in three places. On the bed, blood had soaked through the sheets and mattress pad on to the mattress itself; the stained sheets had been covered by a comforter. In the living room, a large wet blood stain close to the wall had been covered by a loose piece of carpeting. And a significant pool of blood had collected where Garcia's body lay in the living room. The police found a steak knife in the kitchen sink with blood on the blade. And they found clothes the pair had been seen wearing earlier that morning in the videos: both appellant's and Garcia's clothes were blood-stained, and Garcia's shirt and sweatshirt—unlike the shirt she was wearing when EMTs arrived—were torn in a manner that comported with her wound. Police found the shower floor dry, and repeated tests found no evidence of blood in the bathroom.

At trial, the State offered evidence establishing that the blood on the steak knife belonged to Garcia and that Garcia had DNA from appellant under her fingernails. The State also offered evidence from a number of witnesses that the relationship between appellant and Garcia was contentious and that appellant had acted violently toward her in the past. Indeed, appellant was on bond from a charge of domestic violence against Garcia at the time of her death.

Appellant offered his own expert testimony from a medical examiner. She testified that the medical examiner's opinion that Garcia's death was the result of

homicide—as opposed to a suicide, or an accident, or an undetermined cause—was dependent on the history given the medical examiner by the police. She also testified that no one could know how long a person would survive after suffering the wound Garcia had suffered: she agreed that such a wound could "bleed out" and cause the victim to die in as little as ten minutes or as long as two or three hours.

The jury found appellant guilty of murder, and he was sentenced to confinement for a term of seventy years. This appeal followed.

## Sufficiency of the Evidence of Murder

In a single issue, appellant contends that the evidence was insufficient to support the jury's verdict. We examine the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We do not evaluate the weight of the evidence or replace the factfinder's judgment with our own. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). The jury exclusively determines the credibility of the witnesses and the weight to be given their testimony. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). Our charge is to ensure that the evidence presented supports the jury's verdict and that the State has presented a legally sufficient case of the offense charged. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). In our review of the record, circumstantial evidence is as probative as direct evidence in

establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

The jury in this case was instructed that:

> A person commits the offense of Murder if the person (1) intentionally or knowingly causes the death of an individual, or (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual.

*See* TEX. PENAL CODE ANN. § 19.02(b)(1), (2). We address first the section-19.02(b)(1) definition of the offense and ask whether appellant intentionally or knowingly caused the death of Garcia. Appellant contends that the evidence supports neither a finding that he wielded the knife that stabbed Garcia, nor a finding that he intended to cause her death or knew his conduct was reasonably certain to do so.

### *The Criminal Act*

Appellant relies on two facts developed at trial to support his argument that the jury could not have rationally concluded beyond a reasonable doubt that he wielded the knife that killed Garcia. It was undisputed, first, that the knife that stabbed Garcia was dropped in the kitchen sink with no apparent attempt to clean off the blood. And, second, the State was unable to offer conclusive DNA evidence that appellant held the knife. Given the totality of the record, however, and viewing the evidence in the light most favorable to the verdict, we conclude that neither of

these facts would preclude a rational factfinder's determination that appellant stabbed Garcia.

The following evidence supports that finding:

- Appellant and Garcia were the only people in the house when Garcia was stabbed.[1] The steak knife that killed Garcia was found in the house, specifically in the kitchen sink.

- Expert testimony explained that Garcia's blood on the knife overwhelmed any DNA transferred by holding the knife's handle, but the DNA evidence did not exclude appellant as the person who stabbed Garcia with the knife.

- Appellant offered different and conflicting explanations of the events causing Garcia's injury and death:

  o On the 911 call, he said had overdosed on drugs.

  o Initially, appellant told the EMTs he was unaware of the wound; then he told an officer he had seen the wound when Garcia showered earlier, but the shower floor was dry, and no blood was found in the bathroom.

  o Still later, he told an officer that she had tripped and fallen on the knife between 2:00 and 2:30 a.m., but the medical examiner testified that her wound was inflicted by a downward motion that could not likely occur

---

[1] The only other person to enter the house after1:00 a.m. was the couple's neighbor, who testified he left shortly after 3:00 a.m., when Garcia—alive and well—had given him a plate of food.

in such a fall and that she could not have survived some six hours after the wound was inflicted.

- Garcia suffered other injuries consistent with a violent encounter before her death, including many fresh bruises, a blunt force injury to her head, and hemorrhaging consistent with strangulation or other action that increased the pressure in her head and neck area.

- A number of witnesses, including friends of both appellant and Garcia, testified to the contentious nature of their relationship. For example, Angela Fairchild, a friend of appellant, reported that she was visiting him the night before Garcia died, and he told her that Garcia had stolen some methamphetamine from him and gotten a hotel room for a man who had just been released from jail. When Garcia entered the house, Fairchild testified,

  > I didn't see him throw her because it happened so fast because she, like, went across the room and she hit the wall on the opposite side of the room and she, like, crumpled down. At this point she, like, curled up into a fetal position, and she covered her head and he was screaming at her and on top of her.

  Fairchild twice calmed appellant down, and Garcia left the house.

- Garcia had fresh blood—and both her own and appellant's DNA—under her fingernails. Photographs taken of appellant that morning by police indicate he had scratches on his face.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found beyond a reasonable doubt that appellant stabbed Garcia. *See Jackson*, 443 U.S. at 319.

*Mens Rea*

To prevail on its murder charge, the State was also required to prove beyond a reasonable doubt that appellant intentionally or knowingly caused Garcia's death. PENAL § 19.02(b)(1). Appellant argues that "[e]ven if [he] wielded the knife," the placement and size of the wound was such that the risk of death it presented would not have been readily apparent and, therefore, it was not rational for jurors to conclude that he inflicted the wound intending to kill Garcia or aware that it was reasonably certain to kill her. He contends that the blood in the house was solely the result of chest compressions performed mechanically by the EMTs and that a layperson could not have known such a small wound could quickly cause the victim's death.

"Murder is a 'result of conduct' offense, which means that the culpable mental state relates to the result of the conduct, i.e., the causing of the death." *Schroeder v. State*, 123 S.W.3d 398, 400 (Tex. Crim. App. 2003). Accordingly, appellant acted with intent if it was his conscious desire to cause Garcia's death, PENAL § 6.03(a); he acted with knowledge if he was aware that his conduct was reasonably certain to cause the result, *id.* § 6.03(b). "Intent to murder can be proven through circumstantial evidence of the defendant's acts and words surrounding the crime."

–8–

*Mitchell v. State*, No. 05-14-01423-CR, 2015 WL 3751777, at \*4 (Tex. App.—Dallas June 16, 2015, no pet.) (mem. op., not designated for publication) (citing *Ex parte Weinstein*, 421 S.W.3d 656, 668 (Tex. Crim. App. 2014)). We consider whether the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict. *Wise*, 364 S.W.3d at 903.

The following evidence supports the jury's finding that appellant stabbed Garcia intentionally or knowingly:

- The wound was in fact fatal.

- Although the width of the wound was only five eighths of an inch, it was two inches deep. The knife was thrust with sufficient force to pierce Garcia's right chest muscles, the right subclavian vein (a large-caliber vein that brings blood back to the heart from the arm), and—once inside the chest cavity—the top portion of the right lung.

- The amount of blood at the scene indicates that Garcia bled profusely. And the location of significant blood pools against a wall in the living room and in the bedroom—as well as blood drops and smears throughout the house—establish that she bled heavily before any chest compressions were begun where she lay.

- The record suggests that appellant attempted to cover up the significant nature of Garcia's injuries by covering large blood deposits and by changing her

–9–

clothes that evidenced the entry of the knife. Appellant also changed from the gray pants he was wearing earlier that morning into blue pants at some time before police arrived; the gray pants were found by police in the living room, with his driver's license in the pocket and blood stains on both legs.

- The presence of Garcia's bruises and head wound suggests additional violent behavior by appellant that morning. The DNA evidence supports an inference that at some point Garcia fought back and inflicted scratches on appellant's face. Jurors could have inferred that the large, wet blood stain close to the living room wall was a result of conduct by appellant that either caused the additional injuries or aggravated the knife-inflicted injuries.

- As noted above, the evidence shows that appellant had a motive to attack appellant; in fact, after discussing that motive, he had attacked her earlier the evening before her death. Only the presence of Fairchild calmed him down at that time.

We conclude that a rational fact finder could have inferred from this evidence that appellant stabbed Garcia either intending to cause her death or knowing that such a forceful stab was reasonably certain to cause her death. We conclude that the jurors could have reasonably drawn the inferences necessary to establish appellant's intent based upon the record as a whole, when considered in the light most favorable to the verdict. *See Wise*, 364 S.W.3d at 903.

**Conclusion**

The evidence at trial was sufficient to support the jury's verdict that appellant murdered Garcia by intentionally or knowingly causing her death. See PENAL § 19.02(b)(1).[2] We overrule appellant's single issue. We affirm the trial court's judgment.

/Bill Pedersen, III//
BILL PEDERSEN, III
JUSTICE

200302f.u05
Do Not Publish
TEX. R. APP. P. 47

---

[2] Given this conclusion, we need not address the State's alternate murder theory under section 19.02(b)(2).



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JEFFREY LEE PATTERSON,
Appellant

No. 05-20-00302-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District
Court No. 3, Dallas County, Texas
Trial Court Cause No. F-1945392-J.
Opinion delivered by Justice
Pedersen, III. Justices Osborne and
Reichek participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered this 10th day of May, 2022.