

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-17-00446-CR

Isidro **RAMOS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 144th Judicial District Court, Bexar County, Texas
Trial Court No. 2015CR9685
Honorable Lorina I. Rummel, Judge Presiding

Opinion by: Irene Rios, Justice

Sitting: Karen Angelini, Justice
Luz Elena D. Chapa, Justice
Irene Rios, Justice

Delivered and Filed: December 27, 2018

AFFIRMED AS REFORMED

A jury convicted appellant Isidro Ramos of one count of the offense continuous sexual abuse of a young child (Count I) and five counts of the offense sexual assault of a child (Counts II through VI), with the complainant being the same individual named in each count. Based upon the jury's recommendation, the trial court sentenced Ramos to thirty years' imprisonment for Count I; seven years' imprisonment for each of Counts II, III, IV, and V; and ten years' imprisonment for Count VI. The sentences for Counts II through VI were suspended in favor of community supervision. On appeal, Ramos contends the evidence is insufficient to support the

jury's finding that he sexually abused or assaulted the complainant. Ramos additionally contends the judgments of conviction entered in the underlying case contain clerical errors. We affirm the trial court's judgments of conviction as reformed.

## BACKGROUND

On December 8, 2014, Erica returned home from work early to find Ramos, her live-in boyfriend, coming out of their shared bedroom with his pants undone. According to Erica, it appeared "[l]ike he was trying to fix it when he was walking out." Erica heard footsteps from the bedroom as though someone had run to the other side of the bedroom. When Erica entered the bedroom, she discovered her fourteen-year-old[1] daughter S.M. in the bedroom, naked from the waist down. Erica slapped both Ramos and S.M., and Ramos ran from the house to a neighbor's home. Erica called the authorities, and Ramos was eventually taken into custody that same day.

Erica accompanied S.M. to the police department, where S.M. gave a statement. Following her interview with police, S.M. underwent an examination with a sexual abuse nurse examiner (SANE) at Methodist Hospital. S.M. later engaged in counseling at the Center for Miracles and then ChildSafe.

Ramos was charged by a single indictment with the offenses of continuous sexual abuse of a child and sexual assault of a child. A jury found Ramos guilty of the offenses and, based upon the jury's recommendation, the trial court sentenced Ramos to thirty years' imprisonment for Count I; seven years' imprisonment for each of Counts II, III, IV, and V; and ten years' imprisonment for Count VI. The sentences for Counts II through VI were suspended in favor of community supervision.

This appeal followed.

---

[1] Erica testified her daughter's birthdate was July 8, 2000.

## SUFFICIENCY OF THE EVIDENCE

In issue one, Ramos contends the evidence is insufficient to support the jury's finding that he sexually abused or assaulted S.M. Ramos argues S.M., Erica, and various lay and expert State witnesses provided the "only incriminating testimony." According to Ramos, each "source of testimony is plagued by far too many internal inconsistencies, and contradicted by far too many other objective witnesses, to ever constitute evidence from which the jury could rationally find the elements of the instant offenses beyond a reasonable doubt."

### Standard of Review

We review the sufficiency of the evidence to support a conviction by viewing all of the evidence in the light most favorable to the verdict to determine whether any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt. *See Arroyo v. State*, No. PD-0797-17, 2018 WL 4344410, at *2 (Tex. Crim. App. Sept. 12, 2018) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard gives full play to the fact-finder's responsibility to resolve testimonial conflicts, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Arroyo*, 2018 WL 4344410, at *2; *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). Further, the fact-finder is the sole judge of the weight and credibility to be given to the testimony. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04; *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact-finder. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Murray*, 457 S.W.3d at 448. We must presume that the fact-finder

resolved any conflicting inferences in the verdict's favor and defer to that resolution. *Id*. at 448–49.

In cases involving sexual offenses committed against children, the Texas Court of Criminal Appeals has determined that a minor's testimony alone is sufficient to prove that the alleged assault occurred. *Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978). The Code of Criminal Procedure codifies this concept into the law as it provides that a conviction for sexually assaulting a child is supportable by "the uncorroborated testimony of the victim of the sexual offense[.]" TEX. CODE CRIM. PROC. ANN. art. 38.07(a).

**Discussion**

A person commits the offense of continuous sexual abuse of a child if: (1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and (2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age. TEX. PEN. CODE ANN. § 21.02(b)(1). A person commits the offense of sexual assault of a child if the person intentionally or knowingly "causes the penetration of the anus or sexual organ of a child[2] by any means." *Id*. § 22.011(a)(2)(A), (c)(1). In this case, Count I of the indictment alleged Ramos committed more than two acts of sexual abuse against S.M. between October 30, 2012 and July 7, 2014. Counts II through VI allege Ramos penetrated S.M.'s sexual organ with his own sexual organ on four occasions and a vibrator once.

During trial, Erica testified that on December 8, 2014, after Ramos ran out of the house, Erica asked S.M. how long "this" had been going on. According to Erica, S.M. told her it happened

---

[2] For purposes of this section, a "child" means a person younger than 17 years of age.

three times. Erica testified S.M. further told her "[Ramos] didn't get to finish" because he had just begun "sticking it in." S.M. told Erica that Ramos had ejaculated inside her before.

### *S.M.'s Testimony Relating to Count I*

S.M. testified that, at the time of the trial, she was a senior in high school. According to S.M., the first time Ramos did anything to make her feel uncomfortable was when she was in seventh grade. According to S.M., they were living in a house on 37th Street. S.M. testified Ramos first "grab[bed her] butt," and then weeks later, attempted to kiss S.M., but S.M. pushed Ramos away. A "few weeks" after that, which was around Halloween in 2012 or 2013 according to S.M., Ramos entered the room S.M. shared with Ramos and Erica, placed himself on top of S.M., pulled down S.M.'s pants, and put his penis in her vagina. S.M. testified it happened again a week later; she also testified Ramos did the same thing "every day" for the rest of the time S.M. lived in the house on 37th Street. S.M. testified Ramos took her to a hotel room, an apartment complex parking lot, and the parking garage at the North Star Mall to have intercourse with her. S.M. stated that when Ramos had intercourse with her in the hotel room, he ejaculated inside her. S.M. testified that during the time she lived with her mother at an apartment complex, Ramos did not assault her because her mother was home all the time. However, when S.M. was in eighth grade, they moved back into the house on 37th Street, and Ramos would assault her nearly every day.

S.M. testified that Ramos told her that he would hurt her and her family if S.M. did not allow Ramos to penetrate her with his penis. S.M. further testified that Ramos told her that if he could not "get it" from S.M., he would do so from S.M.'s younger sister. Finally, S.M. testified Ramos told her that if S.M. became pregnant, he wanted S.M. to have the baby because Erica could not give him a child. Ramos directed S.M. to say that she became pregnant by a boy she was with if she should become pregnant.

***Testimony Relating to Counts II through VI***

S.M. testified she turned fourteen on July 8, 2014, and that she and her mother moved into a house on Elmer Blvd. in August or September of 2014. S.M. stated Ramos would "take [her] to [her] mom's room and pull [her] pants down and lay [her] on the bed and rape [her]." According to S.M., this happened almost every day. S.M. testified Ramos caressed her breasts and vagina with his hands both over and under her clothes and put both his penis and a vibrator in her vagina. S.M. further testified Ramos attempted to put his tongue in her vagina and his penis in her anus.

S.M. testified that on the day her mother discovered what Ramos had been doing, S.M. did not tell her mother how long the assaults had been occurring because she was afraid Ramos would "come back and try to get [her] and [her] family." However, S.M. eventually told "[t]he woman from ChildSafe." Additionally, SANE Betty Mercer observed as another SANE examined S.M. on December 8, 2014. Mercer testified S.M. stated Ramos put his penis in her vagina four to five times a week for the previous two months.

Rogelio Olvera, a forensic scientist with the Bexar County Criminal Investigation Laboratory, testified he examined the sexual assault kits from both S.M. and Ramos. According to Olvera, a test conducted on S.M.'s underwear, confirmed the presence of sperm. Additional testing conducted by Kimberly Lander, also a forensic scientist with the Bexar County Criminal Investigation Laboratory, did not exclude Ramos "as a contributor [of the] foreign markers on [S.M.'s] underwear." Lander also tested the penile swab collected from Ramos. According to Lander, S.M. "was not excluded as a source of the human DNA on the penile swabs."

In a criminal case, juries have a right to decide whether the witnesses who testified were credible and to decide what weight, if any, should be attached to a witness's testimony. *See Jackson*, 443 U.S. at 319. Ultimately, when the evidence and inferences available from the

evidence are in conflict, we must presume that the jury resolved any existing conflicts in favor of the manner the jury voted to reach its unanimous verdict. *See id*. at 326.

Therefore, although Ramos argues inconsistencies exist in the testimony presented during his trial, we conclude the jury was within its right as the fact-finder to evaluate any inconsistencies and could have reasonably decided to credit the complainant's testimony that the sexual assaults occurred. *Id*. We conclude, viewing the evidence in the light most favorable to the verdict, the jury could reasonably have found the essential elements of the alleged offenses beyond a reasonable doubt.

Issue one is overruled.

### CLERICAL ERRORS

In his second issue, Ramos contends the judgments of conviction for Counts II through VI each contain a clerical error. The State agrees. During the sentencing portion of Ramos's trial, the trial court announced the sentences for Counts II through VI were to run concurrent with each other, but consecutive to Count I. The judgments of conviction for Counts II through VI contained in the record on appeal, however, state the judgments for Counts II through VI run **consecutive** to each other, as well as to Count I.

Accordingly we reform the judgment of conviction for Trial Court No. 2015CR9685, Count II that reads "THIS SENTENCE SHALL RUN CONSECUTIVE WITH COUNTS III, VI, V, VI BUT CONSECUTIVELY WITH COUNT I" to read "THIS SENTENCE SHALL RUN CONCURRENT WITH COUNTS III, IV, V, VI BUT CONSECUTIVELY WITH COUNT I." We reform the judgment of conviction for Trial Court No. 2015CR9685, Count III that reads "THIS SENTENCE SHALL RUN CONSECUTIVE WITH COUNTS II, VI, V, VI BUT CONSECUTIVELY WITH COUNT I" to read "THIS SENTENCE SHALL RUN CONCURRENT WITH COUNTS II, IV, V, VI BUT CONSECUTIVELY WITH COUNT I." We

reform the amended judgment of conviction for Trial Court No. 2015CR9685, Count IV that reads "THIS SENTENCE SHALL RUN CONSECUTIVE WITH COUNTS II, III, V, VI BUT CONSECUTIVELY WITH COUNT I" to read "THIS SENTENCE SHALL RUN CONCURRENT WITH COUNTS II, III, V, VI BUT CONSECUTIVELY WITH COUNT I." We reform the amended judgment of conviction for Trial Court No. 2015CR9685, Count V that reads "THIS SENTENCE SHALL RUN CONSECUTIVE WITH COUNTS II, III, IV, VI BUT CONSECUTIVELY WITH COUNT I" to read "THIS SENTENCE SHALL RUN CONCURRENT WITH COUNTS II, III, IV, VI BUT CONSECUTIVELY WITH COUNT I." We reform the judgment of conviction for Trial Court No. 2015CR9685, Count VI that reads "THIS SENTENCE SHALL RUN CONSECUTIVE WITH COUNTS II, III, IV, V BUT CONSECUTIVELY WITH COUNT I" to read "THIS SENTENCE SHALL RUN CONCURRENT WITH COUNTS II, III, IV, V BUT CONSECUTIVELY WITH COUNT I."

## CONCLUSION

The trial court's judgment is affirmed as reformed.

Irene Rios, Justice

DO NOT PUBLISH