**AFFIRM; and Opinion Filed July 24, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

## No. 05-18-00272-CR

_____

**CHRISTOPHER ALLEN DAVIS, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 5**
**Dallas County, Texas**
**Trial Court Cause No. F15-76601-L**

## OPINION

Before Justices Brown, Schenck, and Pedersen, III
Opinion by Justice Schenck

A jury found appellant Christopher Allen Davis guilty of sexual assault. The trial court assessed appellant's punishment, enhanced by a prior felony conviction, at confinement in the Institutional Division of the Texas Department of Criminal Justice for life. In this Court, appellant contends the trial court erroneously admitted evidence of three extraneous offenses and that evidence of one of those offenses violated his constitutional right to confrontation. He also contends that the evidence is insufficient to support the jury's verdict. We affirm.

### BACKGROUND

Early in the morning of August 7, 2008, K.R. and her friend D.R. drove together to a house in Dallas where appellant lived with his roommate, Chris Norton, and Norton's girlfriend, H.L. Evidence established that people often went to the house to "hang out" and "get high." That morning, K.R., D.R., Norton, and appellant all smoked methamphetamine. All except appellant

consumed a half-cap of gamma-hydroxybutyric acid (GHB), which apparently gives an enhanced but short high to its users. When the effects of the GHB were wearing off, appellant prepared and offered the women wine coolers. Shortly thereafter, K.R. found it almost impossible to walk, and she blacked out. She awoke later that morning, in her car, which had been abandoned and parked in a warehouse area. D.R. was unconscious in the back seat of the car. At trial K.R. described having only flashes of memory that involved both men having sex with her.

When she was able, K.R. drove home, where she and D.R. smoked methamphetamine again. They were afraid to report the assaults because they had gone to appellant's house to get high, but K.R.'s roommate persuaded the women to go to the hospital. He drove them to nearby Doctors Hospital. There, hospital personnel told the women that they could not perform a sexual assault exam: the police would take them to Parkland Hospital where the exam could be performed. D.R. did not stay and wait for the police; K.R. did. Later that same day, D.R. took herself to Parkland for a sexual assault exam. The officers asked K.R. what had happened, and she told them. She also showed the officers a packet of information she had retrieved from My Space that showed the location of appellant's house and included pictures of Norton with different women, including one who was unconscious.

Testimony and records establish that, at Parkland, sexual assault exams are performed in the Intermediate Care Center by a faculty member of UT Southwestern Medical School. The process can take four to six hours. K.R. met with a number of people: nurses took blood and urine samples; Victim Interaction Prevention Counselors met with her to assess her and to speak to her about resources. Then Dr. David Rahn performed the sexual assault exam. He explained that these exams begin with a history. He asks the patient for information about the assault to guide him in the treatment he will provide and in collecting evidence. The patient is examined "head to toe" for any injuries, including a vaginal exam for internal injuries. Swabs are taken for potential evidence;

slides may also be prepared. Medication is offered to treat sexually transmitted diseases including HIV. The victim's clothes are taken and are submitted with the sealed sexual assault kit to the Southwestern Institute of Forensic Sciences (SWIFS), Dallas County's forensic laboratory service provider. K.R.'s exam lasted a number of hours, after which she went home.

K.R. did not respond to calls from the Dallas Police to follow up on her report. Although she was sober at the time of trial, in 2008 she was still involved in the drug world. The case remained idle until a legislative grant to test rape kits led to hers being tested in 2015. After DNA in her kit produced a match to appellant, K.R. identified him from a photo lineup and also identified him at trial as the man who had assaulted her in 2008.

The jury found appellant guilty of sexual assault. During the punishment phase of the trial, the State presented evidence of appellant's prior convictions for sexual assault, robbery, and burglary. The trial court imposed a life sentence. This appeal followed.

**DISCUSSION**

## I.    Sufficiency of the Evidence

In his first issue, appellant argues the evidence is insufficient to support the jury's finding that he committed sexual assault. Specifically, appellant contends that the State failed to prove beyond a reasonable doubt that when he had sex with K.R., it was without her consent.

A person commits sexual assault if he intentionally or knowingly causes the penetration of the sexual organ of another person by any means, without that person's consent. TEX. PENAL CODE ANN. § 22.011(a)(1)(A). The penal code defines "consent" as "assent in fact, whether express or apparent." *Id*. § 1.07(a)(11). The statute disjunctively lists eleven manners of proving that a sexual assault was without consent. *Id.* § 22.011(b). The trial court's charge included five of the eleven:

> the actor compels the other person to submit or participate by the use of physical force or violence;

the actor compels the other person to submit or participate by threatening to use force or violence against the other person or to cause harm to the other person, and the other person believes that the actor has the present ability to execute the threat;

the other person has not consented and the actor knows the other person is unconscious or physically unable to resist;

the other person has not consented and the actor knows the other person is unaware that the sexual assault is occurring; or

the actor has intentionally impaired the other person's power to appraise or control the other person's conduct by administering any substance without the other person's knowledge.

*Id.* § 22.011(b)(1)–(3), (5)–(6). The State has the burden to prove the sexual act at issue was not consensual. *Moon v. State*, 607 S.W.2d 569, 570 (Tex. Crim. App. 1980) ("Lack of consent to the sexual intercourse in a rape case is an essential element of the State's case.").

We review appellant's sufficiency challenge by examining the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This standard applies equally to direct and circumstantial evidence. *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor; indeed, circumstantial evidence can be sufficient on its own to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The jury is the sole judge of the credibility of witnesses and the weight to be given to their testimony. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). We may not substitute our judgment for that of the jury. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999).

Appellant argues the State failed to carry its burden on the element of consent. He contends that the jury "speculated and guessed" about the consent issue. We disagree. At the outset, the jury heard K.R. testify that she did not consent to intercourse with appellant. Under the circumstances of this case, we could uphold appellant's conviction on that testimony alone. TEX. CODE CRIM. PROC. ANN. art. 38.07(a) (conviction under chapter 21 "supportable on the uncorroborated

testimony of the victim of the sexual offense if the victim informed any person, other than the defendant, of the alleged offense within one year after the date on which the offense is alleged to have occurred"). However, K.R.'s testimony was not uncorroborated.

Justin Schwane, the toxicology lab supervisor at SWIFS, testified that K.R.'s urine sample taken at Parkland contained a high level of GHB. A test is deemed positive at a level of 10; K.R.'s sample was measured at 60, both when it was initially tested and when re-tested for confirmation. When questioned, Schwane testified that he would expect GHB to be gone from a subject's body after eight to ten hours, but he stated that the greater the dose of GHB, the longer the detection window.

Dr. Stacey Hail, who is board certified in emergency room medicine and medical toxicology, testified that GHB is a well-known date rape drug. It acts very quickly, it causes amnesia, and it is difficult to detect in biological specimens. Accordingly, if the GHB was detected in urine twelve to sixteen hours after it was taken, it was probably a large dose. She testified that a person who tested at K.R.'s level would not have been capable of giving consent to sex. She stated that such a person would be unconscious during most of the encounter, could wake up momentarily, open her eyes, and see what was happening, but would be physically unable to resist. Hail's testimony comports with K.R.'s description of momentary, or flash, memories of appellant (and Norton) attacking her.

As to the source of the large dose of GHB, Norton testified that—although he did not see appellant put GHB in the wine cooler he made for K.R.—he saw appellant put a straw in the drink and knew what appellant was doing: GHB is heavier than water and settles to the bottom of drinks, so sipping with a straw allows all the GHB to be consumed quickly. Norton agreed that appellant "could pretty much do whatever he wanted" to K.R. because he gave her that GHB.[1]

---

[1] Norton testified against appellant pursuant to a plea agreement. He pleaded guilty to sexual assault of K.R. as a party.

Appellant argues that the State offered no evidence that he knew K.R. was unconscious, unable to resist, or unaware that he was having sex with her. What an actor knew or intended may be inferred from circumstantial evidence, including his acts, words, and conduct. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). The jury could have inferred from the testimony of these witnesses that appellant administered a large dose of GHB to K.R., without her knowledge, precisely so he could have sex with her when she could not resist. Norton testified that he saw K.R. "passed out" on the living room floor. He also testified that he and appellant had to carry K.R. to her car later that morning. K.R.'s unconscious status was apparent to Norton; the jury could certainly have inferred that it was apparent to appellant as well.

The jury was able to observe these witnesses and to determine their credibility. Viewing the evidence in the light most favorable to the verdict, a rational jury could have found beyond a reasonable doubt that appellant intentionally impaired K.R.'s ability to control her conduct by administering a large dose of GHB to her without her knowledge, *see* PENAL § 22.011(b)(5), and then—without her consent—had sex with her while he knew she was unconscious and physically unable to resist, *see id.* § 22.011(b)(3), and while he knew she was unaware the assault was occurring, *see id.* § 22.011(b)(4).

We conclude the evidence is sufficient to support the jury's verdict.[2] We overrule appellant's first issue.

## II. Extraneous Offenses

In his second issue, appellant contends that the trial court erred by admitting evidence of three extraneous offenses during the guilt–innocence portion of trial. The allegations involved

---

[2] Appellant asks us to consider Norton's testimony of his earlier sexual relationship with K.R. The testimony is in our record in the form of an offer of proof; it was excluded by the trial court. In a sufficiency review, "[o]ur review of 'all of the evidence' includes evidence that was properly and improperly *admitted*." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (emphasis added). This is because all evidence the trial court has admitted may be weighed and considered by the jury; as a reviewing court, we are "obliged to assess the jury's factual findings from this perspective." *Thomas v. State*, 753 S.W.2d 688, 695 (Tex. Crim. App. 1988). The testimony at issue here was not admitted by the trial court. It was not before the jurors and could not have played any part in their fact findings. It would be inappropriate for us to consider it as part of our sufficiency analysis.

were made by three women, each of whom asserted that appellant had sexually assaulted her in his home.

## A. The Offenses

The State first offered evidence of statements made by D.R., who had accompanied K.R. to appellant's home the evening of the offense. D.R. had passed away before K.R.'s trial. But the trial court allowed the State to offer—through Dr. Rahn again—statements that D.R. had made during her forensic sexual assault examination.[3] Rahn reported that D.R. identified two men who had assaulted her as "O.C." and "Chris."[4] His testimony continued:

> She reported that she blacked out, but remembered that OC's penis had been in her mouth and that the other man was videotaping; her legs were weak, and she couldn't walk. She stated vaginal and anal intercourse had occurred. She remembers being shoved into a pillow with an assailant saying, if she doesn't shut up, he'd kill her.

Rahn confirmed that D.R. reported being penetrated vaginally, orally, and anally with a penis and a vibrator. He also testified to D.R.'s medical condition, including bruising, loose stool, and pain in her vaginal-rectal wall.

Next, the State offered testimony from H.L., Norton's girlfriend. H.L. became involved with Norton when she was in high school and bought drugs from him; she was using methamphetamine at the time, and it was still her drug of choice in 2008. They had been dating for several years when they moved in with appellant. She knew appellant from his dealings with Norton, buying and selling drugs. She testified that her only real contact with appellant was when they would all smoke methamphetamine together. She did not specifically remember K.R. or D.R., but she knew that Norton and appellant would have girls over to get high; Norton provided the drugs; she knew that sometimes he had sex with them.

---

[3] Appellant's third issue addresses the confrontation concerns raised by admission of this evidence.

[4] Witnesses testified that Norton was known as "O.C."

At trial, H.L. was not certain of the date, but records indicate she had reported that her rape occurred on August 11, 2008, less than a week after K.R.'s assault. On that day, Norton had taken H.L.'s car to start a new job, leaving her alone with appellant. He asked if she wanted to go in the garage and play darts, and she agreed. He brought her a drink in a cup, with a straw. A short time later they went inside so H.L. could show appellant some family pictures on the computer, which was kept in a spare bedroom with two dog kennels. She sat on a stool by the computer and remembers starting to fall off. Appellant brought some pillows for her, and at that point she blacked out. The next thing she knew, her "face [was] going into the dog kennels" while appellant was having sex with her from behind. She had not consented to sex with him, but she could not do anything to stop him. She was "pass[ing] out and com[ing] back to" and remembered appellant taking her physically into his bedroom—she was unable to walk—and there he penetrated her with a vibrator. Her final memory of the encounter was appellant's ejaculating on her face. H.L. testified that she had taken GHB three to five times before with Norton; the way she felt that day "was kind of like that" but that this reaction was much stronger.

V.R. made the third allegation against appellant. She described herself as a former methamphetamine addict. During the ten years of her addiction, she met appellant and went to his house to get high several times with her boyfriend. Appellant provided them methamphetamine for free. She knew some people took GHB at the house, but she had never taken it there knowingly. On August 11, 2009, she went to the house alone, injected methamphetamine, and had an alcoholic drink. She does not remember who mixed it for her. She started not to feel well and went into a bedroom to lie down. She fell asleep or lost consciousness and woke with appellant on top of her, touching and rubbing her and doing things to her that "she didn't want done." She told him to stop, but he handcuffed her to the bed and ripped her clothes off. She screamed and cried out, but she could not get away because of the handcuffs. He penetrated her vaginally and then anally while

pushing her down into the bed. V.R. never consented to the sexual activity. She testified that she had taken GHB a couple of times before, but that night she did not feel the way she normally did after taking GHB or methamphetamine.

### B.    Rule 404(b)

Appellant objected to this evidence based on rule 404(b) of the Texas Rules of Evidence.[5] Evidence of a crime other than the one charged is not admissible to prove a defendant's character in order to show that, on a particular occasion, the defendant acted in accordance with that character. TEX. R. EVID. 404(b)(1). This evidence may be admissible, however, for a purpose other than character conformity, such as proof of a defendant's plan or intent. *Id.* 404(b)(2). Evidence of extraneous misconduct may also be admitted to rebut a defensive issue that negates one of the elements of a charged offense. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). In this case, the State argues that the extraneous offenses described above "provided strong evidence of appellant's plan or scheme of using GHB to drug women in his home so he could sexually assault them." Proof of such a scheme would tend to rebut the defensive position that the parties' sexual interaction was consensual and would implicate appellant's intent. *See Casey v. State*, 215 S.W.3d 870, 880 (Tex. Crim. App. 2007) ("[W]hen the defensive theory of consent is raised in a prosecution for sexual assault, the defendant necessarily disputes his intent to engage in the alleged conduct without the complainant's consent and places his intent to commit sexual assault at issue.").

In this context, courts have allowed the State to offer evidence of a defendant's *modus operandi*, i.e., the defendant's distinctive or idiosyncratic manner of committing crimes. *Id.* at

---

[5] Appellant also objected to some of the evidence on rule 403 grounds. His argument on appeal, however, is limited to rule 404(b). Although appellant does not discuss rule 403, he does cite to the "tests" found in *Montgomery v. State*, 810 S.W.2d 372, 392–93 (Tex. Crim. App. 1990) (op. on reh'g), and *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006), both of which dealt with admissibility of evidence under rule 403. In the absence of any specific argument related to that rule, it suffices to say that the factors identified in those tests do not persuade us that the trial court erred reversibly in allowing evidence of the extraneous offenses. It was not an abuse of discretion to find that the probative value of this evidence substantially outweighed the risk of unfair prejudice to appellant.

880–81; *Scott v. State*, No. 05-17-01193-CR, 2018 WL 3968485, at \*7 (Tex. App.—Dallas Aug. 20, 2018, pet. ref'd) (mem. op., not designated for publication) ("Modus operandi evidence may be used to shed light on a disputed issue of lack of consent.").

We review the admissibility of an extraneous offense for an abuse of discretion. *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). If the trial court's ruling is within the zone of reasonable disagreement, there is no abuse of discretion, and we will uphold it. *Id.*[6]

Appellant argues the extraneous events are not similar enough to K.R.'s allegations to be admissible under a *modus operandi* theory. We disagree. In each of these three instances, like K.R.'s, the complainant went to appellant's home for drug-related reasons. All complainants were vulnerable women with histories of methamphetamine abuse or addiction. In each case, the woman was given an alcoholic drink, rendered incapacitated, and awoke to the experience of being sexually assaulted by appellant. These women were familiar with GHB as a recreational drug, but they testified that their reaction in this case was very different from any earlier experience with the drug. The assaults on K.R., D.R., and H.L. occurred within a week of each other; V.R.'s assault was precisely one year later. All took place in appellant's home. We conclude the evidence in these four offenses is "remarkably similar" and was admissible to prove appellant's plan and—by rebutting his argument of consent—his intent to commit sexual assault. *See Casey*, 215 S.W.3d at 880–81.[7]

---

[6] Appellant urges us to adopt a de novo review of the trial court's ruling under rule 404(b). The Court of Criminal Appeals has stated that when the trial court concludes that evidence serves some purpose other than character conformity in making the existence of a material fact more or less probable, an appellate court owes no less deference to the trial court than it affords it on any other relevance decision. *Montgomery*, 810 S.W.2d at 391. We have followed *Montgomery* and applied the abuse of discretion standard to trial court decisions under both rule 404(b) and rule 403. *Beasley v. State*, 838 S.W.2d 695, 702 (Tex. App.—Dallas 1992, pet. ref'd) ("We should not conduct a de novo review of the record and make a wholly independent judgment of the two issues.") (citing *Montgomery*, 810 S.W.2d at 392). We are not free to disregard the decisions of a higher court or our own precedents.

[7] Appellant raises a number of arguments under this issue that attempt to discredit the witnesses making allegations against him: they are drug addicts; they have memory problems; they did not give accurate or complete information to police and hospital workers concerning their own drug and alcohol history. These are issues that go to the weight to be given the evidence, not to its admissibility. The jurors are the sole judge of the credibility of witnesses and the weight to give their testimony. We may not substitute our judgment for theirs. *Montgomery*, 369 S.W.3d at 192; *see also Dewberry*, 4 S.W.3d at 740.

We acknowledge that the four assaults were not committed in identical fashion, but extraneous-offense evidence need not be completely identical to the charged offense in order to be probative. *Page v. State*, 213 S.W.3d 332, 338 (Tex. Crim. App. 2006). We conclude the trial court's decision to admit the three extraneous offenses was within the zone of reasonable disagreement.

### C. Harm

Even if admission of evidence concerning any of the extraneous offenses was erroneous, we could not reverse unless its admission affected appellant's substantial rights. TEX. R. APP. P. 44.2(b) ("Any [non-constitutional] error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."). We do not see such harmful error in the trial record. We concluded above that the evidence was sufficient for the jury to conclude that appellant committed the sexual assault charged based on the complainant's testimony and the evidence tending to prove she was drugged before the assault. We did not require evidence of the extraneous offenses to reach that conclusion.

In addition, the trial court orally instructed the jury before presentation of the evidence and then instructed again in the charge as to how the jury could use evidence of the extraneous offense:

> You are instructed that if there is any testimony before you in this case regarding the defendant having committed offenses other than the offense alleged against him in the indictment in this case, you cannot consider that testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offenses, if any were committed, and even then you may only consider it in determining the motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident of the defendant, if any, in connection with the offense alleged against him in the indictment in this case, and for no other purpose.

We generally presume that the jury follows the trial court's instructions in the manner presented. *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005). An appellant may refute this presumption, but he must do so by pointing to evidence that the jury failed to follow the instruction.

–11–

*Id.* Appellant has not identified any such evidence in this case. We cannot say that the admission of evidence of the extraneous allegations of sexual assault affected appellant's substantial rights.

We overrule appellant's second issue.

### III.    Appellant's Right of Confrontation

In his third issue, appellant charges that his right to confront all witnesses against him was violated by the admission of statements made by D.R. during her forensic sexual assault exam. The State responds that D.R. provided a verbal history to medical personnel at Parkland Hospital for the sole purpose of receiving medical treatment. Therefore, the statements did not implicate appellant's confrontation rights.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. The admission of testimonial hearsay violates the Confrontation Clause unless the declarant is shown to be unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). D.R. died before trial, and the parties agree that appellant had no opportunity to cross-examine her before her death. Appellant's third issue thus turns on whether D.R.'s statements during her forensic sexual assault examination were testimonial.

Appellant argues that D.R.'s statements that she was threatened, where the assault occurred, and the identity of the persons who assaulted her were testimonial and were not related to medical diagnosis or treatment. He contends that admission of the statements was egregious error that violated the Supreme Court's directives in *Crawford*. We acknowledge that appellant raises a significant concern involving statements made by an unavailable witness within her medical records. However, we need not resolve that concern in this case because—even if we

assume, for purposes of this opinion, that the statements were testimonial—any error in admitting them was harmless.

We determine whether an error in admitting statements that violate *Crawford* is harmless beyond a reasonable doubt by considering:

(1) The importance of the hearsay statements to the State's case;

(2) Whether the hearsay evidence was cumulative of other evidence;

(3) The presence or absence of evidence corroborating or contradicting the hearsay testimony on material points; and

(4) The overall strength of the prosecution's case.

*Davis v. State*, 203 S.W.3d 845, 852 (Tex. Crim. App. 2006). Before we will determine that confrontation error is harmless, we must be convinced, beyond a reasonable doubt, that its erroneous admission "would probably not have had a significant impact on the mind of an average juror." *Id.*

Certainly, D.R.'s statements were relevant and important to the State's case. We have concluded that evidence of her assault was remarkably similar to evidence of both K.R.'s and the other victims' assaults that were admitted as extraneous offenses. We have concluded further that this evidence was admissible to prove appellant's plan and—by rebutting his argument of consent—his intent to commit sexual assault. In particular, D.R.'s evidence was probative of appellant's conduct on the very night that he purportedly assaulted K.R. However, the State also offered evidence of appellant's plan through the offenses involving H.L. and V.R. And H.L.'s offense took place within a week of K.R.'s, so the State offered other evidence that was close in time to the offense at issue. Appellant urges that the evidence was harmful because it conflicted with Norton's testimony that sex with D.R. was consensual and because DNA evidence from D.R.'s exam excluded appellant. But D.R.'s evidence was also corroborated by K.R.'s testimony concerning symptoms of GHB drugging. Overall, the State's case was strong, relying at its heart

–13–

on both K.R.'s direct testimony concerning those GHB symptoms and her memory of the assault. In the end, given all the evidence of appellant's guilt, we are convinced, beyond a reasonable doubt, that the erroneous admission of D.R.'s testimonial statements would probably not have had a significant impact on the mind of an average juror. *See id.*

We overrule appellant's third issue.

## CONCLUSION

We affirm the trial court's judgment.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

Concurring Opinion by Pedersen, III, J.

Publish
TEX. R. APP. P. 47

180272F.P05



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

CHRISTOPHER ALLEN DAVIS,
Appellant

No. 05-18-00272-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 5, Dallas County, Texas
Trial Court Cause No. F15-76601-L.
Opinion delivered by Justice Schenck.
Justices Brown and Pedersen, III
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 24th day of July, 2019.